**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 4, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BOB COFFEY; LORETTA CORN;
LARRY JONES; MARY ELLEN
JONES; JOHN DOE, and all those
similarly situated,

      Plaintiffs-Appellees,

v.

FREEPORT MCMORAN COPPER &
GOLD; BLACKWELL ZINC
COMPANY, INC.; PHELPS DODGE
CORPORATION; CYPRUS AMAX
MINERALS COMPANY,

      Defendants-Appellants,

   and

AMAX, INC., f/k/a American Metal
Company; BLACKWELL
INDUSTRIAL AUTHORITY;
BNSF RAILWAY COMPANY,
f/k/a Burlington Northern Santa Fe
Railway Company,

      Defendants.

No. 09-6106

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:08-CV-00640-HE)**

---

Marie R. Yeates, Vinson & Elkins, LLP, Houston, Texas (Morgan L. Copeland, Jr.; Lewis C. Sutherland, Vinson & Elkins, LLP, Houston, Texas; Sandra G. Rodriguez, Vinson & Elkins, LLP, Austin, Texas; Reid E. Robison, McAfee & Taft, Oklahoma City, Oklahoma; Kevin E. O'Malley, Gallagher & Kennedy, P.A., Phoenix, Arizona, with her on the briefs), for Defendants-Appellants.

Nelson J. Roach, (Keith L. Langston with him on the brief), of Nix, Patterson & Roach, LLP, Dangerfield, Texas, for Plaintiffs-Appellees.

Before **TACHA**, **ANDERSON**, and **MURPHY**, Circuit Judges.

**PER CURIAM**.

Plaintiffs-Appellees Bob Coffey, Loretta Corn, Larry Jones, and Mary Ellen Jones filed a class action in state court in Oklahoma on behalf of themselves and all other similarly situated persons asserting state law claims based on the defendants' alleged contamination of their property through operation of the Blackwell Zinc Smelter in Blackwell, Oklahoma. Freeport McMoRan Copper & Gold, Phelps Dodge Corporation, Cyprus Amax Minerals Company, and Blackwell Zinc Company, Inc. (collectively the "Freeport Defendants"[1]) removed the case to federal court, asserting federal jurisdiction based on the Class Action

---

[1] Plaintiffs also sued the Blackwell Industrial Authority ("BIA") and the BNSF Railway Company. Those defendants consented to the notice of removal filed by the Freeport Defendants, but they are not parties to this appeal.

-2-

Fairness Act ("CAFA") and the Comprehensive Environmental Response,

Compensation and Liability Act ("CERCLA").[2]

Plaintiffs filed a motion to remand, arguing that there was no basis for

federal jurisdiction. The district court granted the motion, concluding that

plaintiffs had demonstrated that their case fell within the "local controversy

exception" to CAFA, and did not raise a federal question under CERCLA. The

Freeport Defendants appeal from that decision.[3] We have jurisdiction over this

appeal pursuant to 28 U.S.C. § 1453(c)(1).

We affirm the district court's decision granting the motion to remand

because we agree that plaintiffs' case falls within the "local controversy

exception" to CAFA. We decline to exercise our appellate jurisdiction to

consider the issue of whether plaintiffs' case raises a federal question

under CERCLA.

## I. Background

Defendant Blackwell Zinc Company, Inc. ("BZC") owned and operated a

smelter used to refine zinc and cadmium-ore concentrates in Blackwell,

_____

[2]     The Freeport Defendants also argued that removal was authorized under 28 U.S.C. § 1442(a)(1). The district court disagreed, and that portion of the district court's decision is not being challenged on appeal.

[3]     The Freeport Defendants were granted permission to appeal from the remand order pursuant to 28 U.S.C. § 1453(c)(1), which provides an exception to the general rule that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," 28 U.S.C. § 1447(d).

Oklahoma, from 1922 until 1974. In 1974, BZC dismantled the facility and donated the land to the Blackwell Industrial Authority ("BIA"). The BIA developed the property as an industrial park.

In 1992, the Environmental Protection Agency ("EPA") indicated that the City of Blackwell might be designated a Superfund site and placed on the National Priorities List if investigation and remediation efforts did not begin. That year, BZC, BIA, and the City of Blackwell entered into a Consent Agreement and Final Order with the Oklahoma State Department of Health to remediate the environmental contamination at the old Blackwell Zinc smelter site. In 1994, the Oklahoma Department of Environmental Quality (ODEQ) and the EPA entered into a Memorandum of Understanding to ensure a prompt CERCLA-quality cleanup of the site under the direction of ODEQ.

In 1996, soil remediation efforts began. In 2001, ODEQ issued a Final Remedial Action Completion Report, which documented that the soil remediation remedy had been completed. In 2007, defendant Phelps Dodge, on behalf of BZC, initiated a supplemental voluntary soil cleanup effort for those homeowners who may not have participated in the earlier soil cleanup. Phelps Dodge also indicated that it was going to construct and operate a facility to treat groundwater affected by the former smelter's operations.

In 2008, plaintiffs filed this putative class action in state court in Oklahoma, asserting nuisance, trespass, strict liability, and unjust enrichment claims. Plaintiffs sought injunctive relief for additional environmental remediation and medical monitoring as well as money damages for diminution in property value. Plaintiffs included in their putative class definition all Oklahoma citizens currently domiciled in the State of Oklahoma who own private real property in Blackwell, or within a five-mile radius of the smelter site, and all Oklahoma citizens who reside or at any time resided on real property located in Blackwell or within a five-mile radius of the smelter site.

## II. CAFA

CAFA was enacted to respond to perceived abusive practices by plaintiffs and their attorneys in litigating major class actions with interstate features in state courts. CAFA allows federal jurisdiction over class actions involving at least 100 members and over $5 million in controversy when minimal diversity is met (between at least one defendant and one plaintiff-class member). It is undisputed that those standards are met here.

Congress did create an exception to CAFA, however, for those cases consisting of primarily local, *intrastate* matters, which it characterized as the "Local Controversy Exception," S. Rep. No. 109-14, at 39 (2005). A district court must decline to exercise jurisdiction if the plaintiffs can satisfy the requirements for this exception, *see* 28 U.S.C. § 1332(d)(4)(A). As the Senate

Report explains, "[t]his provision is intended to respond to concerns that class actions with a truly local focus should not be moved to federal court under this legislation because state courts have a strong interest in adjudicating such disputes." *Id*.

This case presents a classic example of what Congress intended to cover when it created this exception. It is a "truly local controversy— a controversy that uniquely affects a particular locality to the exclusion of all others." *Id*. The plaintiffs are all Oklahoma citizens who were affected by a purely local incident—the contamination from the former Blackwell Zinc smelter. They are suing the former owner of the smelter, BZC, and the legal entities that have owned BZC since the closing of the smelter and have acted on its behalf in an attempt to remediate the environmental impacts from the smelter.[4]

There are three main requirements for plaintiffs to meet in order to satisfy the "local controversy exception." The Freeport Defendants did not contest that plaintiffs met two of the three requirements—all of the members of the plaintiff class are Oklahoma citizens, and the principal injuries occurred in Oklahoma, *see* 28 U.S.C. § 1332(d)(4)(A)(i)(I), (III). The provision in dispute relates to the

---

[4]    As of 1993, BZC was owned by AMAX, Inc., who then merged with Cyprus Minerals Company to form Cyprus Amax Minerals Company. In 1999, defendant Phelps Dodge Corporation bought defendant Cyprus Amax Minerals Company. Phelps Dodge is now known as Freeport-McMoRan Corporation and is a wholly owned subsidiary of defendant Freeport-McMoRan Copper & Gold Inc.

requirement that there be at least "one real local defendant," S. Rep. No. 109-14, at 40.  In order to satisfy this "local defendant" requirement, plaintiffs must show that:

(II) at least 1 defendant is a defendant--

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed[.]

28 U.S.C. § 1332(d)(4)(A)(i).

Plaintiffs argued that BZC satisfied this "local defendant" requirement, and the district court agreed.  The Freeport Defendants do not dispute that BZC's conduct formed a significant basis for the claims asserted by the proposed plaintiff class, but they argue that plaintiffs failed to show that BZC is a defendant from whom significant relief is sought or that BZC is a citizen of Oklahoma.

### *Significant Relief*

In their motion for remand, plaintiffs argued that BZC was a defendant "from whom significant relief is sought by members of the plaintiff class" because all class members had claims against BZC—as opposed to a mere subset of class members; all class members were seeking to hold BZC jointly and

severally liable for all of plaintiffs' damages; and, given the fact that BZC was the operator of the smelter from 1922-1974, it was reasonably likely that BZC would be held at least equally responsible for plaintiffs' damages, if not more so.

In response, the Freeport Defendants argued that the language "from whom significant relief is sought" requires consideration of a defendant's ability to pay a judgment, relying on *Robinson v. Cheetah Transportation*, No. 06-0005, 2006 WL 468820 (W.D. La. Feb. 27, 2006) (unpublished magistrate judge's decision).  In *Robinson*, the court held that

> whether a putative class seeks significant relief from an in-state defendant includes not only an assessment of how many members of the class were harmed by the defendant's actions, but also a comparison of the relief sought between all defendants and *each defendant's ability to pay a potential judgment*.

*Id*. at *3 (emphasis added).  The Freeport Defendants asserted that BZC has no assets to satisfy any potential judgment and that therefore BZC could not be considered a defendant from whom significant relief is sought.  Plaintiffs replied that the plain language of the statute does not require an assessment of a defendant's ability to pay a judgment, but, even if it did, BZC would be able to satisfy a judgment through its insurance coverage.

The district court observed that "[c]ourts generally have required that the local defendant's conduct be significant when compared to the alleged conduct of the other defendants and that 'the relief sought against that defendant is a significant portion of the entire relief sought by the class.'"  Aplt. App. at 1514

-8-

(quoting *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006)).

The district court then distinguished the facts of the *Robinson* case, and

considered defendants' argument that the phrase "from whom significant relief is

sought" should be construed as "from whom significant relief may actually be

obtained." Aplt. App. at 1514-17. The district court ultimately rejected

defendants' position, concluding that

> plaintiff[s'] view of the "significant defendant" element is most
> consistent with the statutory language actually employed by
> Congress. The CAFA exception refers to a defendant from whom
> significant relief is "sought," rather than a defendant from whom the
> relief "may be obtained" or "can be collected" or words of similar
> import.

*Id*. at 1518.

The district court determined that the "significant relief element is satisfied

here, where the petition claims that every potential plaintiff is entitled to recover

from [] BZC and the proposed class seeks to collect damages from all defendants

jointly and severally." *Id*. at 1517. Given its conclusion "that BZC's status as a

significant defendant does not turn on its ability to satisfy any judgment the class

may obtain against it," the district court declined to consider BZC's financial

status as part of the motion for remand because "that inquiry, alone, would be a

mini trial, involving consideration of multiple insurance coverage litigation

settlement agreements, the solvency of different carriers, pollution and other

policy exclusions, etc." *Id*. at 1519 and n.22.

On appeal, the Freeport Defendants assert that the district court erred in its interpretation of the "significant relief" requirement. They ask this court to follow the *Robinson* court's construction of the "significant relief" provision, which would require a district court to assess a defendant's ability to pay a potential judgment when considering this subpart of the "local defendant" requirement, which is itself a subsection of the "local controversy exception." In light of the plain language of the statute, we find the Freeport Defendants' argument unpersuasive.

> We review a district court's statutory interpretation de novo, and it is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction. In ascertaining such congressional intent, we begin by examining the statute's plain language, and if the statutory language is clear, our analysis ordinarily ends.

*Russell v. United States*, 551 F.3d 1174, 1178 (10th Cir. 2008) (quotations, citations, and alterations omitted), *petition for cert. filed*, 77 U.S.L.W. 3657 (U.S. May 18, 2009) (No. 08-1437).

The disputed portion of the "local defendant" provision requires that the defendant be one "from whom significant relief is sought by members of the plaintiff class," 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). We agree with the district court's plain language analysis. The statutory language is unambiguous, and a "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained." There is nothing in the language

-10-

of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration, which is one of <u>six</u> issues for a court to consider when deciding whether the "local controversy exception" is met.

Accordingly, because we agree with the district court's interpretation of the statute, and because there is no dispute over the court's application of the statutory language to the facts of this case, we affirm the district court's conclusion that plaintiffs satisfied the "significant relief" requirement in § 1332(d)(4)(A)(i)(II)(aa).

### *Citizenship of BZC*

The last subpart under the "local defendant" provision requires that the defendant be a citizen of the state in which the action was originally filed, which in this case is Oklahoma. In order to establish Oklahoma citizenship, BZC—a New York corporation—must have its principal place of business in Oklahoma. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business").

In the district court, plaintiffs asserted that BZC was an active corporation with its principal place of business in Oklahoma because it owns real property in Oklahoma and pays taxes on that property; filed an application for a permit to operate a groundwater treatment plant in Oklahoma; has been conducting

-11-

voluntary environmental remediation for many years in Oklahoma; and initiated a community outreach program—which includes a community outreach office, public meetings, newsletters, and a website—to educate the citizens of Blackwell about BZC's environmental remediation efforts. Moreover, plaintiffs asserted that BZC had been licensed to do business in Oklahoma since 1922, that its license was still active, and that it was conducting business only in Oklahoma.

In response, the Freeport Defendants argued that BZC was not a citizen of Oklahoma because it had not conducted sufficient business there since it was acquired by Cyprus Amax in 1999. BZC's corporate secretary attested that, since that time, the company has conducted no business, other than following the formalities to keep the corporation in existence. BZC also submitted evidence that it has no significant assets and is not engaged in any revenue-generating operations. BZC asserted that its environmental remediation activities were in response to legal claims arising from its prior operations and that it was an inactive corporation with no principal place of business. BZC argued that it was solely a citizen of New York, its state of incorporation.

The district court stated that it was "not persuaded that the various environmental response activities that BZC has conducted or overseen beginning in the 1990's do not constitute 'transacting business' for jurisdictional purposes." Aplt. App. at 1512 (alteration, quotation, and citation omitted). The court noted

plaintiffs' argument that "the only purpose for the continued existence of BZC is to clean up pollution in Blackwell left behind by the smelter." *Id.* (alteration and quotation omitted). The court concluded that BZC's clean up activity was a "substantial activity in which it is currently engaged" and that this "activity suffices to establish Oklahoma as BZC's principal place of business." *Id.* (citing *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000)).

A district court's determination about a corporation's principal place of business "is a question of fact that we review for clear error." *Gadlin*, 222 F.3d at 799. The Freeport Defendants argue, however, that this court should conduct a de novo review of the district court's determination because the "the underlying facts are not in dispute," instead "[t]he issue is the legal significance of those facts when viewed through the prism of the appropriate test for citizenship, which is a question of law . . . ." Aplt. Reply Br. at 11 n.3. But the Freeport Defendants do not present any authority to support their position. The clear error standard of review has been used for the principal-place-of-business determination since this court issued its decision in *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 914 (10th Cir. 1993).

In *Gadlin*, this court held: "When determining a corporation's principal place of business, a court should look to the total activity of the company or the totality of the circumstances . . . ." *Gadlin*, 222 F.3d at 799 (quotation omitted).

The district court's analysis is consistent with this precedent. The Freeport Defendants have failed to show that the district court's decision on BZC's citizenship was clearly erroneous.

### III. CERCLA

In the district court, the Freeport Defendants argued that CERCLA provided another basis for federal court jurisdiction. The district court disagreed, concluding that plaintiffs' action did not present a federal question under CERCLA. On appeal, plaintiffs first argue that this court does not have jurisdiction to consider the portion of the district court's remand order discussing the CERCLA issue. As noted earlier, CAFA allows for an exception to the general rule that an order remanding a case to state court is not reviewable on appeal or otherwise. It provides:

> Section 1447 shall apply to any removal of a case under this section, except that notwithstanding section 1447(d), a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not less than 7 days after entry of the order.

28 U.S.C. § 1453(c)(1). Plaintiffs assert that, based on CAFA's limited exception for reviewing remand orders, this court only has jurisdiction to consider the district court's CAFA determination and may not review the district court's order with respect to the CERCLA determination.

-14-

In *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 451-52 (7th Cir. 2005), the Seventh Circuit concluded that it was "free to consider any potential error in the district court's decision, not just a mistake in application of the Class Action Fairness Act. When a statute authorizes interlocutory appellate review, it is the district court's entire decision that comes before the court for review." (citing *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996)). In *Yamaha*, the Supreme Court was considering the scope of review of an order in an interlocutory appeal. The Court concluded that, based on the text of 28 U.S.C. § 1292(b), "appellate jurisdiction applies to the *order* certified to the court of appeals, and is not tied to the particular question formulated by the district court." *Id*. at 205. Accordingly, "the appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court." *Id*. (quotation omitted).

We agree with the *Brill* court that *Yamaha*'s analysis applies equally to the jurisdictional provision in this case because § 1453(c)(1) speaks in terms of the court of appeals accepting an appeal "from an *order* of a district court granting or denying a motion to remand a class action." (emphasis added). There is no language limiting the court's consideration solely to the CAFA issues in the remand order.

Although this court does have jurisdiction to consider the CERCLA issue, its decision to exercise that jurisdiction is discretionary. *See*, *e.g.*, *Yamaha*,

-15-

516 U.S. at 205 ("the appellate court *may* address any issue fairly included within the certified order" (emphasis added)); *Brill*, 427 F.3d at 451 ("we are *free* to consider any potential error in the district court's decision" (emphasis added)). Accordingly, we may decline to exercise our appellate discretion to consider the CERCLA issue. *Cf. Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 197 (2d Cir. 2008) (acknowledging discretion to consider questions outside of the scope of the issue district court certified for interlocutory appeal but declining to exercise that discretion); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219-20 (11th Cir. 2001) (same).

If the district court had granted the motion to remand based solely on the CERCLA issue, then the remand order would not be reviewable on appeal pursuant to 28 U.S.C. § 1447(d). As the legislative history explains: "[t]he purpose of [§ 1453(c)(1)] is to develop a body of appellate law interpreting [CAFA] without unduly delaying the litigation of class actions. As a general matter, appellate review of orders remanding cases to state court is not permitted, as specified by 28 U.S.C. § 1447(d)." S. Rep. No. 109-14, at 49. Although this court has discretion to exercise its appellate jurisdiction to review the CERCLA issue, it does not fit with the reasons behind § 1453(c)(1) to do so, and we conclude that this is an appropriate case in which to decline to exercise that discretion.

## IV. Conclusion

We AFFIRM the district court's order remanding this case to state court because plaintiffs' case falls within CAFA's "local controversy exception."