# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRADFORD COLEMAN, individually,
and on behalf of other members of
the general public similarly
situated, and as aggrieved
employee pursuant to the Private
Attorneys General Act ("PAGA"),
                    *Plaintiff-Appellee,*

v.

ESTES EXPRESS LINES, INC., a
Virginia Corporation; ESTES WEST,
a business entity form unknown;
G.I. TRUCKING COMPANY, FKA DOE
1, DBA Estes West,
            *Defendants-Appellants.*

No. 10-56852

D.C. No.
2:10-cv-02242-
ABC-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, Chief District Judge, Presiding

Argued and Submitted
January 10, 2011—Pasadena, California

Filed January 25, 2011

Before: Diarmuid F. O'Scannlain, William A. Fletcher, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge William A. Fletcher;
Concurrence by Judge O'Scannlain

**COUNSEL**

Robert Ebert Byrnes, Mark Paul Estrella, Sue Jin Kim, Darrel Menthe, David M. Medby, Mirian Leigh Schimmel, Glenn Danas (argued), Initiative Legal Group APC, Los Angeles, California, Payam Shahian, Strategic Legal Practices APC, Los Angeles, California, for the plaintiff-appellee.

Timothy M. Freudenberger, Sarah Drechsler, Garrett V. Jensen, Carlton Disante & Freudenberger LLP, San Francisco, California, David Lee Terry, David L. Woodard (argued), Poyner Spruill LLP, Raleigh, North Carolina, for the defendants-appellants.

**OPINION**

W. FLETCHER, Circuit Judge:

Under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), defendants may remove a diversity class action from state to federal court when, among other conditions, the parties are minimally diverse and the amount in controversy exceeds $5,000,000. 28 U.S.C. §§ 1332(d)(2), 1453(b). However, plaintiffs may obtain a remand to state court if the suit involves a local controversy. *Id.* § 1332(d)(4)(A)(i). The question before us is whether a federal district court is limited to the complaint in deciding whether two of the criteria for the local controversy exception are satisfied. We hold that the district court is so limited.

## I. Background

Estes Express is a Virginia corporation. It acquired G.I. Trucking, a California corporation, in 2005. After the acquisition, G.I. Trucking was renamed Estes West (d/b/a G.I. Trucking) but remained a California corporation. Bradford Coleman, who was employed as a pickup and delivery driver by G.I. Trucking and then by Estes West from 2004 to 2009, brought a putative class action against Estes West and Estes Express (collectively, "Estes") in Los Angeles County Superior Court based on multiple alleged violations of California law.

Coleman alleged in his complaint that Estes West and Estes Express (1) failed to pay overtime, (2) failed to provide meal and rest periods, (3) failed to timely pay earned wages after discharging employees, (4) failed to pay earned wages to current employees, (5) failed to provide wage statements, and (6) engaged in unlawful business practices, all in violation of California law. On behalf of the proposed class, Coleman requested that Estes West and Estes Express pay unpaid overtime and other wages, pay one hour of wages for each day

that a meal break was not provided and an additional hour for each day that rest breaks were not provided, and pay miscellaneous civil penalties. Coleman also requested injunctive relief against Estes West and Estes Express.

Coleman alleged that both Estes West and Estes Express violated California law. He alleged that

> each and all of the acts and omissions alleged herein was [sic] performed by, or is attributable to [Estes Express Lines, Inc. and/or Estes West and Doe Defendants], each acting as the agent for the other, with legal authority to act on the other's behalf. . . . At all relevant times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

The remainder of the complaint referred to actions taken by "Defendants," rather than actions taken separately by Estes Express or Estes West.

Estes removed to federal court under CAFA. 28 U.S.C. §§ 1332(d), 1453(b). Coleman moved to remand to state court, arguing that the case was a local controversy under CAFA.

A plaintiff whose putative class action has been removed can obtain a remand to state court under any of three exceptions to the district court's subject matter jurisdiction under CAFA. *Id.* § 1332(d)(3), (d)(4)(A), (d)(4)(B). The local controversy exception, upon which Coleman relies, provides that a federal district court "shall decline to exercise [removal] jurisdiction . . . over a class action in which — "

(I) greater than two-thirds of the members of all pro-posed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant —

    (aa) from whom significant relief is sought by members of the plaintiff class;

    (bb) whose alleged conduct forms a signifi-cant basis for the claims asserted by the proposed plaintiff class; and

    (cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged con-duct or any related conduct of each defendant were incurred in the State in which the action was origi-nally filed[.]

28 U.S.C. § 1332(d)(4)(A)(i). A plaintiff seeking remand has the burden of showing that the local controversy exception applies. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007).

Estes opposed remand, arguing that two of the criteria for the local controversy exception were not satisfied. First, Estes argued that Estes West had insufficient funds to satisfy a judgment, and that "significant relief" therefore had not been "sought" from it. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa). Second, Estes argued that Estes Express had almost complete control over the operations of Estes West, and that Estes West's "alleged conduct" therefore did not "form a significant basis for the claims asserted by the proposed plaintiff class." *Id.* § 1332(d)(4)(A)(i)(II)(bb). If either of Estes's arguments is correct, Coleman is not entitled to a remand under the local controversy exception.

In support of its arguments, Estes filed a declaration by Brenda Gerczak, Director of Human Resources for Estes Express. With respect to funds from which Estes West could satisfy a judgment, Ms. Gerczak declared:

> Estes West does not have the funds to satisfy a potential judgment in the lawsuit brought by Bradford Coleman; only Estes Express would possess such funds. Although, in compliance with California law, Estes maintains a bank account in California for payroll purposes, the account is funded entirely by Estes Express from its own funds. . . .
>
> Estes West has no source of revenue. Estes Express supplies all funds needed for the operation of the Estes West region. Revenue in Estes' trucking operation is derived from bills submitted to customers who use Estes to transport freight. . . . All monies paid by customers on account of these invoices are paid directly to Estes Express and retained by Estes Express except for the money needed to fund the payroll account for Estes West. . . . Estes West receives no income from any other source.

With respect to Estes Express's control over the operations of Estes West, Ms. Gerczak declared:

> Estes Express assumed complete control over payroll practices and functions immediately after it completed its acquisition of Estes West. Since the acquisition, Estes Express has directed every aspect of the payroll function in California, including establishing pay periods, pay days and pay rates for all employees in California and elsewhere in the Estes West region. . . .
>
> In addition to matters of payroll, Estes Express maintains control over all other general terms of

> employment for California employees. . . . In sum, Estes Express possesses and maintains complete control over every significant term of employment for every Estes employee in the State of California. Local managers in the Estes West region give day to day instructions to employees, but such instructions are given strictly within the operating rules and guidelines established by Estes Express in Virginia.

The district court held that it could not look beyond the allegations in the complaint in deciding whether Coleman "sought" "significant relief" from Estes West. Looking only to the complaint, it held that Coleman had satisfied the significant relief requirement of § 1332(d)(4)(A)(i)(II)(aa). The district court did not resolve the question of whether it could look beyond the complaint in deciding whether Estes West's "alleged conduct form[ed] a significant basis" for Coleman's claims. It held that regardless of whether it considered Ms. Gerczak's declaration, Coleman had satisfied the conduct requirement of § 1332(d)(4)(A)(i)(II)(bb). The district court therefore remanded Coleman's putative class action to state court.

Under CAFA, a party may seek to appeal to the court of appeals a remand order of the district court. The court of appeals has discretion whether to accept the appeal. 28 U.S.C. § 1453(c)(1). On November 30, 2010, we granted Estes permission to appeal. *Coleman v. Estes Express*, __ F.3d __ (9th Cir. 2010) (per curiam), 2010 U.S. App. LEXIS 24434. In granting permission, we noted that the question whether a district court may look beyond the allegations of the complaint in determining the applicability of the local controversy exception had not been resolved in this circuit. We therefore concluded that "appellate review would be useful." *Id.* at *8.

## II.   Standard of Review

We review issues of statutory interpretation *de novo*. *Rodriguez v. Smith*, 541 F.3d 1180, 1183 (9th Cir. 2008).

## III.    Discussion

### A.    The Text

We begin with the words of the statute. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). "When the words of a statute are unambiguous . . . this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (internal quotation marks omitted). We hold that CAFA's language unambiguously directs the district court to look only to the complaint in deciding whether the criteria set forth in § 1332(d)(4)(A)(i)(II)(aa) and (bb) are satisfied.

**[1]** The first criterion is whether "significant relief is *sought*" from a defendant who is a citizen of the state in which the suit is filed. 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) (emphasis added). The word "sought" focuses attention on the plaintiff's claim for relief — that is, on what is "sought" in the complaint — rather than on what may or may not be proved by evidence. The second criterion is whether the defendant's "*alleged* conduct forms a significant basis for the claims asserted by the proposed plaintiff class." *Id.* § 1332(d)(4)(A)(i)(II)(bb) (emphasis added). Like the word "sought," the word "alleged" makes clear that the second criterion is based on what is alleged in the complaint rather than on what may or may not be proved by evidence.

**[2]** There is a revealing contrast between the language in subsections (aa) and (bb) and the language in subsection (cc). All three subsections specify criteria that must be satisfied before the local controversy exception to CAFA jurisdiction applies. Subsection (cc) requires that the defendant from whom relief is sought and whose alleged conduct is at issue be a defendant "who *is* a citizen of the State in which the action was originally filed." *Id.* § 1332(d)(4)(A)(i)(II)(cc) (emphasis added). Unlike the words "sought" and "alleged,"

used in subsections (aa) and (bb), the word "is," used in subsection (cc), indicates that an actual fact must be established.

The decision of the Tenth Circuit in *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1244-45 (10th Cir. 2009), illustrates the distinction between "sought" in subsection (aa) and "is" in subsection (cc). In *Coffey*, plaintiffs' putative class action had been removed to federal court under CAFA. They moved to remand under the local controversy exception. Defendants opposed remand, contending that the criteria of subsections (aa) (relief sought from the defendant) and (cc) (citizenship of the defendant) had not been satisfied. In addressing the question of relief under subsection (aa), the court held that the district court had properly looked only to the complaint. It wrote:

> The statutory language is unambiguous, and a "defendant from whom significant relief is sought" does not mean a "defendant from whom significant relief may be obtained." There is nothing in the language of the statute that indicates Congress intended district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration[.]

*Id.* at 1245. By contrast, in addressing citizenship under subsection (cc), the court upheld the district court's factual determination of citizenship, writing that the defendants "ha[d] failed to show that the district court's decision on [the corporation]'s citizenship was clearly erroneous." *Id.* at 1246.

Estes argues that our understanding of the words "sought" and "alleged" in subsections (aa) and (bb) is inconsistent with the common practice of considering extrinsic evidence and making factual determinations in resolving questions of a federal court's subject matter jurisdiction. It is true that some questions of subject matter jurisdiction are questions of fact, the determination of which may depend on evidence. For

example, as just noted, in CAFA itself a district court may rely on evidence to determine the citizenship of a defendant under subsection (cc). A district court may also consider evidence in deciding whether CAFA's $5,000,000 amount-in-controversy requirement has been satisfied. *See Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000-01 (9th Cir. 2007); 28 U.S.C. § 1332(d)(2) ("The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs[.]"). Further, a district court may consider evidence in determining citizenship and amount-in-controversy under general provisions of the diversity jurisdictional statute, 28 U.S.C. § 1332(a), (c). *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) (affirming district court's factual finding on amount in controversy); *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1094 (9th Cir. 1990) (looking to extrinsic evidence to determine corporation's citizenship).

**[3]** However, for three reasons, we do not believe that this practice should apply to determinations under subsections (aa) and (bb). First, as just discussed, the plain language of these subsections indicates, through the use of the words "sought" and "alleged," that the district court is to look to the complaint rather than to extrinsic evidence.

Second, though district courts sometimes consider evidence in making some subject matter jurisdiction determinations, they do not always do so. For example, under long-established law, the district court looks to the "well-pleaded complaint," rather than to any subsequent pleading or evidence, in determining whether there is federal question subject matter jurisdiction under 28 U.S.C. § 1331. *See*, *e.g.*, *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005); *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 672 (1950); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152-53 (1908).

Third, factual determinations under subsections (aa) and (bb) are likely to be more expensive and time-consuming than factual determinations of citizenship and amount-in-controversy. Congress was particularly concerned that subject matter jurisdiction determinations be made quickly under CAFA. A party must seek permission from the court of appeals to bring an appeal from a district court's remand decision under CAFA, and such permission is granted sparingly. *Coleman*, 2010 U.S. App. LEXIS 24434, at *6-7; *Coll. of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 37-39 (1st Cir. 2009). Then, if permission is granted, the court of appeals is required to render its decision in sixty days. *See* 28 U.S.C. § 1453(c)(2).

If a determination whether "significant relief is sought" against the local defendant under subsection (aa) requires a factual determination about the respective ability of the various defendants to satisfy a judgment, that determination has the potential to be expensive and time-consuming. For example, in *Coffey* the district court would have had to determine, as a factual matter, not only the defendants' financial situation but that of their insurance carriers. 581 F.3d at 1244-45. We agree with the Tenth Circuit's statement in *Coffey* that "nothing in the language of the statute . . . indicates Congress intended the district courts to wade into the factual swamp of assessing the financial viability of a defendant as part of this preliminary consideration[.]" *Id.* at 1245.

**[4]** A factual determination whether the "alleged conduct" of the local defendant "forms a significant basis for the claims asserted" by plaintiffs under subsection (bb) is particularly likely to be expensive and time-consuming. Such a determination necessarily implicates the merits of the case. We see nothing in CAFA that indicates a congressional intention to turn a jurisdictional determination concerning the local defendant's "alleged conduct" into a mini-trial on the merits of the plaintiff's claims.

## B.    Legislative History

**[5]** Because we hold that the text is unambiguous, we need not consult the legislative history. We discuss that history only because several courts have relied on a Report of the Senate Judiciary Committee to support a conclusion that the district court is not limited to the complaint in deciding whether the criteria of subsections (aa) and (bb) are satisfied. *See, e.g.*, *Green v. SuperShuttle Int'l, Inc.*, No. 09-2129, 2010 U.S. Dist. LEXIS 7456, at *10 (D. Minn. Jan. 29, 2010); *Casey v. Int'l Paper Co.*, No. 07-421, 2008 U.S. Dist LEXIS 1298, at *16-19 (N.D. Fla. Jan. 7, 2008); *Robinson v. Cheetah Transp.*, No. 06-0005, 2006 U.S. Dist. LEXIS 10129, at *11-12 (W.D. La. Feb. 27, 2006).

The Committee briefly addressed the issue of jurisdictional fact-finding in a report accompanying CAFA:

> The Committee understands that in assessing the various criteria established in all these new jurisdictional provisions, a federal court may have to engage in some fact-finding, not unlike what is necessitated by the existing jurisdictional statutes. The Committee further understands that in some instances, limited discovery may be necessary to make these determinations. However, the Committee cautions that these jurisdictional determinations should be made largely on the basis of readily available information. Allowing substantial, burdensome discovery on jurisdictional issues would be contrary to the intent of these provisions to encourage the exercise of federal jurisdiction over class actions.

S. Rep. No. 109-14, at 44 (2005).

This paragraph is consistent with our conclusion that a district court cannot look beyond the complaint in determining whether the criteria of subsections (aa) and (bb) have been

satisfied. The first sentence provides that under CAFA "a federal court may have to engage in some fact-finding, *not unlike what is necessitated by the existing jurisdictional statutes*." *Id.* (emphasis added). Fact-finding is "necessitated by the existing jurisdictional statutes" on questions of citizenship and amount-in-controversy. *See* 28 U.S.C. § 1332(a), (c); *Guglielmino*, 506 F.3d at 701; *Indus. Tectonics, Inc.*, 912 F.2d at 1094. There is jurisdictional fact-finding under CAFA on precisely those two questions. There is fact-finding on the question of citizenship under § 1332(d)(4)(A)(i)(II)(cc). *Coffey*, 581 F.3d at 1245-46. And there is fact-finding on the question of amount-in-controversy under § 1332(d)(2). *Lowdermilk*, 479 F.3d at 998-1000. However, there is no fact-finding under CAFA on the questions posed in subsections (aa) and (bb) — relief sought and alleged conduct. These jurisdictional questions are unique to CAFA. That is, questions posed under subsections (aa) and (bb) are *unlike* the questions posed under existing jurisdictional statutes.

With respect to the local controversy exception to CAFA jurisdiction, the Committee wrote that the exception requires that one "real" defendant must be local. S. Rep. No. 109-14, at 29. The Committee gave two examples of "how the Committee intends [the local controversy] provision to work." *Id.* at 41. The first example is:

> A class action is brought in Florida against an out-of-state automobile manufacturer and a few in-state dealers, alleging that a certain vehicle model is unsafe because of an allegedly defective transmission. The vehicle model was sold in all fifty states but the class action is only brought on behalf of Floridians. This case would not fall within the Local Controversy Exception for two reasons. First, the automobile dealers are not defendants whose alleged conduct forms a significant basis of the claims or from whom significant relief is sought by the class. Even if the plaintiffs are truly seeking relief from the

dealers, that relief is just small change compared to what they are seeking from the manufacturer. Moreover, the main allegation is that the vehicles were defective. In product liability cases, the conduct of a retailer such as an automobile dealer does not form a significant basis for the claims of the class members. [Second, the principal injuries from selling the defective product were "incurred in all fifty states," even if though this particular action was brought by citizens of the same state.]

*Id.*

Some courts have taken this example, in particular the "small change" phrase, to mean that a district court, as part of its jurisdictional determination, should make a factual decision as to which defendant or defendants will actually pay the bulk of any damage award. *See, e.g.*, *Robinson*, 2006 U.S. Dist. LEXIS 10129, at \*12. We do not believe that the example supports this interpretation, for reading the complaint in such a case would tell any experienced lawyer or judge all she needs to know. First, because liability is premised on an allegedly defective transmission common to all cars of a particular model, the conduct of the local dealers will not form a significant basis for the plaintiffs' claims. Second, the manufacturer will be liable to every member of the class, whereas individual dealers will only be liable to, at most, the particular class members with whom they interacted. Thus, it is obvious in this case that the great bulk of any damage award is sought from the manufacturer of the cars rather than from the local dealers. In this example, the determination whether the relief sought from a particular defendant is "small change" can reasonably be made solely on the basis of the allegations in the complaint.

The second example is:

A class action is brought in Florida state court against a Florida funeral home regarding alleged

wrongdoing in burial practices. Nearly all the plaintiffs live in Florida (about 90 percent). The suit is brought against the cemetery, a Florida corporation, and an out-of-state parent company that was involved in supervising the cemetery. No other class action suits have been filed against the cemetery. This is precisely the type of case for which the Local Controversy Exception was developed. Although there is one out-of-state defendant (the parent company), the controversy is at its core a local one, and the Florida state court where it was brought has a strong interest in resolving the dispute. Thus, this case would remain in state court.

S. Rep. No. 109-14, at 41. In this example, too, the jurisdictional determinations under subsections (aa) and (bb) can be made based on the complaint. There is nothing in this example to suggest that evidence and a factual determination are necessary.

## C. Disagreement among Federal Courts

Federal courts have disagreed on the question whether a district court may look only to the complaint in determining whether the criteria of subsections (aa) and (bb) have been satisfied. Two other circuit courts that have addressed the question reached the same conclusion we do today. *Coffey*, 581 F.3d at 1245 (holding that the district court may look only to the complaint in addressing subsection (aa)); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 157 (3d Cir. 2009) (directing lower court to focus on allegations in complaint, not extrinsic evidence).

On the other hand, the Eleventh Circuit has considered extrinsic evidence in addressing prong (bb). *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167-68 (11th Cir. 2006). In *Evans*, however, the court never discussed whether such evi-

dence was properly before it, so it is possible that the parties did not raise that issue.

There is also a line of cases in the district courts that consider extrinsic evidence, the most prominent of which is the unpublished decision in *Robinson v. Cheetah Transportation*, No. 06-0005, 2006 U.S. Dist. LEXIS 10129 (W.D. La. Feb. 27, 2006). In *Robinson*, a commercial truck driver struck a bridge in Louisiana, requiring closure of the bridge. Plaintiff sued in state court in Louisiana on behalf of a proposed class of those affected by the closure, naming as defendants the driver, his employer, the employer's insurance company, and the owner of the truck's payload. The defendants removed to federal court under CAFA. The truck driver was the only defendant who was a citizen of Louisiana. Plaintiff sought a remand to state court under the local controversy exception. The district court held that plaintiff had failed to "provide any evidence" that "significant relief" was sought from the driver within the meaning of subsection (aa). 2006 U.S.Dist. LEXIS 10129, at *14. Some courts have followed *Robinson* and have looked outside the complaint to determine whether the criteria of subsections (aa) and (bb) have been satisfied. *See, e.g.*, *Evans*, 449 F.3d at 1167-68 (quoting *Robinson* and considering extrinsic evidence on "significant basis" prong); *Green v. SuperShuttle Int'l, Inc.*, No. 09-2129, 2010 U.S. Dist. LEXIS 7456, at *10 (D. Minn. Jan. 29, 2010); *Kurth v. Arcelormittal USA, Inc.*, No. 09-108, 2009 U.S. Dist. LEXIS 99126, at *33-37 (N.D. Ind. Oct. 14, 2009); *Casey v. Int'l Paper Co.*, No. 07-421, 2008 U.S. Dist LEXIS 1298, at *19-20 (N.D. Fla. Jan. 7, 2008). For the reasons given above, we disagree with these decisions.

We note that it is unclear whether the court in *Robinson* understood that there might be any controversy about its ability to go outside the complaint in making its determination under subsection (aa). In the actual case before it, the district court did indicate that plaintiff had "failed to provide any evidence" that significant relief was available against the truck

driver, but we are not sure that the court fully understood the significance of its reference to the lack of evidence. The court could easily have held, based solely on the complaint, that the criterion of subsection (aa) was not satisfied, for any experienced lawyer or judge reading the complaint would have known that "significant relief" was not being sought against the truck driver. There was no need to go beyond the complaint in order to determine that any relief against the driver would have been, in the phrase used by the Senate Judiciary Committee, "small change."

## D.   Application

**[6]** We hold that Coleman's complaint seeks sufficient relief against Estes West to satisfy subsection (aa). The complaint seeks damages equally from Estes West and Estes Express. There is nothing in the complaint to suggest that Estes West is a nominal defendant, or that Estes West has so few assets (including, for instance, buildings and trucks) that Coleman is not seeking significant monetary relief from it. Further, the complaint seeks injunctive relief against Estes West. There is nothing in the complaint to suggest either that the injunctive relief sought is itself insignificant, or that Estes West would be incapable of complying with an injunction.

**[7]** Coleman's complaint also sufficiently alleges conduct of Estes West that forms a significant basis for the claims asserted on behalf of the class under subsection (bb). The complaint alleges that Estes West employed the putative class members during the relevant period, and that Estes West has violated California law in a number of ways with respect to those employees. The complaint also alleges that Estes Express has violated the same provisions of California law, but the allegations against Estes Express in no way make the allegations against Estes West, the actual employer, insignificant.

We note that we are not convinced that the statements in Ms. Gerczak's declaration, even if we were to consider them,

would carry the day for Estes. With respect to "significant relief" under subsection (aa), Estes contends that because Estes West has only a small bank account in California and because all billing is done through Estes Express, Estes West has insufficient funds to satisfy a damage judgment against it. This contention ignores the possibility that other assets of Estes West would also be available to satisfy a judgment. It also ignores the fact that Coleman sought not only damages but also injunctive relief against Estes West, as to which the assets of Estes West are irrelevant. With respect to "conduct" under subsection (bb), Estes contends that because Estes Express controls all important actions of Estes West, the conduct of Estes West does not "form a significant basis for the claims" asserted by Coleman. This contention ignores the fact that the conduct of Estes West, even if controlled by Estes Express, nonetheless remains the conduct of Estes West, for which Estes West may be held liable. But we leave Ms. Gerczak's declaration to one side as irrelevant to our decision.

**[8]** We conclude that Coleman has satisfied the criteria of 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa) and (bb). It is undisputed that Coleman has satisfied the other criteria for the local controversy exception to federal court jurisdiction under CAFA. The district court was therefore correct in remanding Coleman's putative class action to state court.

### E. Possible Amended Complaint

**[9]** We are aware of the difficulties that can be created by different pleading requirements in state and federal courts. A plaintiff filing a putative class action in state court need satisfy only the pleading standards of that court. It is therefore possible that if a putative class action is removed from state to federal court under CAFA the complaint, as originally drafted, will not answer the questions that need to be answered before the federal court can determine whether the suit comes within the local controversy exception to CAFA jurisdiction. In that circumstance, the district court may, in its

discretion, require or permit the plaintiff to file an amended complaint that addresses any relevant CAFA criteria.

## Conclusion

For the foregoing reasons, we affirm the district court's remand to California state court.

AFFIRMED.

---

O'SCANNLAIN, Circuit Judge, concurring:

I concur in the opinion and judgment except as to Part III.B. As the opinion itself notes, " '[w]hen the words of a statute are unambiguous, . . . judicial inquiry is complete.' " Op. at 1798 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (internal quotation marks omitted)). Because we conclude that the text of CAFA's local controversy exception is unambiguous, I see no need to engage in a lengthy discussion of its legislative history. In my view, the extended quotation and discussion of the legislative history will only serve to obscure our reading of the plain text of CAFA. *See Ratzlaf v. United States*, 510 U.S. 135, 147-48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.").

In any event, I am skeptical that Senate Report No. 109-14 even qualifies as "legislative history," given that it "was not submitted until eighteen days after the Senate had passed the bill, eleven days after the House had passed the bill, and ten days after the President signed the bill into law." *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 448 F.3d 1092, 1096 (9th Cir. 2006) (Bybee, J., dissenting from denial of rehearing en banc). "The Report is therefore of minimal, if any, value in discerning congressional intent, as it was not before the Senate at the time of CAFA's

enactment." *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 954 n.5 (9th Cir. 2009). For this reason alone, we can reject any decisions relying on this Report without having to parse its examples.