WALLACE, Circuit Judge,
dissenting:
I dissent from the majority’s holding in Part A that “plaintiffs should be permitted to amend a complaint after removal to clarify issues pertaining to federal jurisdiction under CAFA.” Opinion p. 11. In considering whether subsections (aa) and (bb) of CAFA’s local controversy exception are satisfied, we should not depart from the bright-line rule that “jurisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments.” Sparta Surgical Corp. v. NASD, 159 F.3d 1209, 1213 (9th Cir.1998); see also Pullman Co. v. *1120 Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939). The majority errs in carving out an inappropriate exception to that rule, based solely on non-binding dicta from Coleman v. Estes Express Lines, Inc., 631 F.3d 1010, 1020-21 (9th Cir.2011), which merely speculates that it “may” be wise, in the district court’s discretion, to “permit the plaintiff to file an amendment to the complaint that addresses any relevant CAFA criteria.” The majority’s rule departs from controlling precedent and will frustrate Congress’s intent that the local controversy exception be a narrow one, carefully drafted to ensure that it does not become a jurisdictional loophole. See Senate Report on CAFA, S. Rep. 109-14, at 39.
I also dissent from the majority’s conclusion in Part B that the district court abused its discretion in denying Plaintiffs leave to file the SAC. The district court did not abuse its discretion because its denial comports with the bright-line jurisdictional rule stated above. Additionally, we have consistently held that a district court does not abuse its discretion under Fed.R.Civ.P. 15 by denying proposed post-removal amendments that would destroy federal jurisdiction, as the proposed SAC does here.
Finally, even if the district court had abused its discretion in denying leave to file the SAC (which it did not), the majority should have remanded to the district court with orders to grant Plaintiffs leave to amend, and then to decide — in the first instance, once the SAC becomes operative — whether the allegations in the SAC satisfy the local controversy exception.
I.
The majority errs in departing from the clear rule that certain jurisdictional questions under CAFA are determined based on the pleadings operative at the time of removal, and are unaffected by later developments, including — especially—artful amending of the complaint. See United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int’l Union v. Shell Oil Co., 602 F.3d 1087, 1091-92 (9th Cir.2010). I fully agree with the Seventh Circuit’s observations that it is a “well-established general rule ... that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction,” and that “removal cases present concerns about forum manipulation that counsel against allowing a plaintiffs post-removal amendments to affect jurisdiction.” In re Burlington N. Santa Fe Ry. Co., 606 F.3d 379, 380-81 (7th Cir.2010). I also agree with the Fifth Circuit’s maxim that “[allowing [plaintiffs] to avoid federal jurisdiction through a post-removal amendment would turn the policy underlying CAFA on its head.” Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC, 768 F.3d 425, 429 (5th Cir.2014).
In Doyle v. OneWest Bank, FSB, 764 F.3d 1097 (9th Cir.2014), for example, our court concluded that the district court erred by considering an amended complaint that was filed post-removal to determine the citizenship of the plaintiff class. Id. at 1098. We specifically held that “[f]or the purpose of considering the applicability of the exceptions to CAFA jurisdiction, the District Court should have determined the citizenship of the proposed plaintiff class based on Doyle’s complaint ‘as of the date the case became removable.’ ” Id, quoting Mondragon v. Capital One Auto Fin., 736 F.3d 880, 883 (9th Cir.2013). This was not dicta, as relied on by the majority, but a holding of our court which should govern this appeal.
Similarly, in United Steel, a putative class action was properly removed under CAFA but, after removal, class certification was denied. Our court held that re *1121 mand to state court was improper — despite the failure of class certification— because “post-filing developments do not defeat [CAFA] jurisdiction if the jurisdiction was properly invoked [based on the pleadings] at the time of filing.” United Steel, 602 F.3d at 1091-92. This, too, was a prior holding of our court.
Nevertheless, the majority holds that district courts must allow plaintiffs to amend after removal if their complaint, as originally filed in state court, fails to address the “significant basis” and “significant relief’ elements of CAFA’s local controversy exception. Opinion p. 1117. Recognizing that allowing such a post-removal amendment is a clear departure from Sparta Surgical’s long-standing rule, the majority states that its conclusion “is necessary in light of Coleman.” Opinion p. 1117. Far from it. The passage the majority cites from Coleman is pure dicta. And it must be rejected because it conflicts with the Supreme Court’s rule in Pullman Co. as well as this court’s holding in United Steel and other cases cited above.
A.
Determining whether the local controversy exception applies should be a quick and simple process for district courts. See Coleman, 631 F.3d at 1016 (“Congress was particularly concerned that' subject matter jurisdiction determinations be made quickly under CAFA”). District judges should simply look at the pleadings “as of the date the case became removable,” Doyle, 764 F.3d at 1098, and decide whether subsections (aa) and (bb) of the local controversy exception are satisfied. This is because, as a textual matter, CAFA’s local controversy exception applies to the district court’s jurisdiction “over a class action.” 28 U.S.C. § 1332(d)(4)(A)(I). The term “class action,” in turn, refers to the “civil action filed.” Id. § 1332(d)(1)(B) (emphasis added). Thus, when Congress said that district courts are to decline to entertain jurisdiction over certain “class actions,” it meant that the “courts are to look at the action when it was filed in order to determine whether the conditions of abstention are present.” Cedar Lodge, 768 F.3d at 428 (emphasis added); see also Doyle, 764 F.3d at 1098 (“For the purpose of considering the applicability of the exceptions to CAFA jurisdiction, the District Court should” look to the “complaint as of the date the case became removable” (internal quotation marks omitted)). As a result, if the district judge cannot discern whether the local controversy conditions are present on the face of the pleadings at the time of removal, the judge should conclude that the plaintiffs have failed to carry their burden to show that the local controversy exception applies. See Mondragon, 736 F.3d at 883.
This procedure is compelled by the critical difference between a federal court’s duty to find jurisdictional facts and its duty to identify and assess jurisdictional allegations. As Coleman explained, “some questions of subject matter jurisdiction are questions of fact, the determination of which may depend on evidence.” 631 F.3d at 1016 (listing, for example, a defendant’s citizenship or the amount in controversy). These jurisdictional facts, which exist independent of the complaint, may require evi-dentiary clarification if the pleadings themselves are insufficient.
Other questions of subject matter jurisdiction, however, including those at issue here, simply ask a court to identify what the plaintiff has alleged, and then to assess whether those allegations meet a jurisdictional standard. Id. (CAFA’s “use of the words ‘sought’ and ‘alleged,’ ” in subsections (aa) and (bb) indicates “that the district court is to look to the complaint rather than to extrinsic evidence”). Identifying what a plaintiff has alleged requires no clarification: the complaint says *1122 what it says. For this reason, having a fixed point in time at which we assess the pleadings is essential. The Supreme Court has so recognized. See Pullman Co., 305 U.S. at 537, 59 S.Ct. 347 (A post-removal “second amended complaint should not have been considered in determining the right to remove, which ... was to be determined according to the plaintiffs’ pleading at the time of the petition for removal”). If we allow plaintiffs to amend these particular jurisdictional allegations post-removal, we are permitting them not merely to “clarify” the existing jurisdictional nature of the suit, but rather to shift the very ground upon which we make our jurisdictional determination. This is why post-removal amendments with respect to subsections (aa) and (bb) are tantamount to post-filing developments that we uniformly consider irrelevant to our jurisdictional determination. See, e.g., United Steel, 602 F.3d at 1091.
We generally refuse to consider post-removal amendments in analyzing our jurisdiction because doing so would invite plaintiffs to plead artfully, after the fact, what is necessary to defeat federal jurisdiction. See In re Burlington, 606 F.3d at 381 (“[Rjemoval cases present concerns about forum manipulation that counsel against allowing a plaintiffs post-removal amendments to affect jurisdiction”). The present case demonstrates the very potential for manipulation that our rule in Sparta Surgical seeks to prevent.
Because applicability of the local controversy exception depends on a vague definition of the local defendant’s “significance,” and because “significant relief’ and “significant basis” can be shown through subjective estimates, plaintiffs have every incentive to “estimate” in a post-removal amendment as much as necessary to defeat CAFA jurisdiction. Indeed, Plaintiffs here sought to amend their complaint after removal to. “elaborate on estimates of the percentage of total claims asserted against” the local defendant. Opinion p. 10. Predictably, this post-filing amendment resulted, in the majority’s view, in Plaintiffs successfully defeating CAFA jurisdiction, which was properly invoked based on the operative complaint at the time of removal. This manufactured result is clearly at odds with Sparta Surgical and its underlying principles.
B.
The concern the majority shares with Coleman’s dicta, of course, is that it may appear unfair to hold plaintiffs to their pleadings at the time of removal since their “state court complaint ... may not address CAFA-specific issues, such as the local controversy exception.” Opinion p. 1117. But that concern is unfounded, and in any event cannot overcome CAFA’s text or our jurisdictional rules. Congress chose language clearly indicating that judges are to look at the action as filed — in state court — when making CAFA’s jurisdictional determinations at the time of removal. See supra Part I.A. Our cases consistently follow this principle. In Doyle, for example, we adhered to CAFA’s textual directive that we determine the parties’ citizenship “as of the date of the filing of the complaint or amended complaint.” 764 F.3d at 1098. Even in Coleman our court recognized that “under long-established law,” in a related jurisdictional context, “the district court looks to the ‘well-pleaded complaint,’ rather than to any subsequent pleading or evidence, in determining whether there is federal question subject matter jurisdiction.” Coleman, '631 F.3d at 1016 (emphasis added).
It should not surprise informed plaintiffs, therefore, when we similarly require them to carry their burden to satisfy the “significant relief’ and “significant basis” elements of the local controversy exception *1123 based upon their pleadings at the time of removal, without regard to “any subsequent pleading.” Id. If plaintiffs fail to carry that burden, it is no excuse that their “putative class action in state court need[ed] satisfy only the pleading standards of that court.” Coleman, 631 F.3d at 1020. Perhaps if state pleading standards somehow prevented plaintiffs from pleading the necessary facts, a narrow exception might be warranted. But the majority fails to cite a single example of a state court pleading standard that would somehow preclude a plaintiff from clearly-alleging in their state-filed complaint that at least one locally domiciled defendant is one “from whom significant relief is sought” and “whose alleged conduct forms a significant basis” for the plaintiffs’ claims. 28 U.S.C. § 1332(d)(4)(B)(II)(aa), (bb).
Accordingly, class action plaintiffs and then- attorneys who are making CAFA-eligible claims in state court should be held to understand that CAFA removal is always a possibility, and that if they wish to remain in state court, they must plead accordingly. If unsawy plaintiffs or careless lawyers are caught unawares, that is unfortunate. But such lack of foresight does not justify our departure from the bright-line rule in Sparta Surgical. Having bright-line rules on jurisdictional matters permits attorneys to know in advance what action they should take. Federal courts, and litigants who appear before us, are better served by our adherence to bright-line jurisdictional rules, rather than our making excuses for those who have faded to follow our procedural mandates.
In sum, jurisdictional determinations that depend exclusively on allegations in the complaint should be determined based on the pleadings operative at the time of removal. Sparta Surgical, 159 F.3d at 1213. CAFA contains no indication that Congress wanted us to deviate from this long-standing rule. In fact, the majority’s departure from this bright-line rule defeats CAFA’s purpose by converting the ostensibly narrow local controversy exception into a tool for plaintiffs to plead out of the very jurisdiction Congress intended-CAFA to bestow. Moreover, it will embroil future courts in making fundamentally artificial determinations about whether any particular post-removal amendment is simply “clarifying” or is rather “manipulating.” Finally, the majority’s departure is in no way “necessary in light of Coleman,” because the relevant passage from Coleman is pure dicta. I therefore dissent from the majority’s holding in Part A.
II.
A.
I also dissent from the majority’s conclusion that the district court abused its discretion in denying Plaintiffs leave to file the SAC. Rule 15 of the Federal Rules of Civil Procedure says that leave to amend “shall be given when justice so requires,’ ” so we accordingly review a denial of leave to amend “strictly in light of the strong policy permitting amendment.” Bowles v. Reade, 198 F.3d 752, 757 (9th Cir.1999). The majority interprets that “strict” standard as requiring leave to amend unless “countervailing considerations — such as undue delay, prejudice, bad faith, or futility — counsel[ ] against amendment.” Opinion p. 10. But even under that standard, the proposed amehdments in the SAC would be “futile” if our case law forbade courts from considering them. Such is the case here.
Our consideration of post-removal amendments is a narrow one-way street in favor of those that support rather than avoid federal jurisdiction. For example, on rare occasions we have considered post-removal amendments that “solidify” *1124 federal jurisdiction, even though removal appeared improper under the operative complaint at'the time of removal. See Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1046 n. 3 (9th Cir.2000); Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am., 768 F.3d 938, 949 (9th Cir.2014). But in doing so, we explained that we would be unwilling to consider a post-removal amendment that sought to .destroy rather than to “solidify” federal jurisdiction. Chabner, 225 F.3d at 1046 n. 3, quoting Sparta Surgical, 159 F.3d at 1213. In light of this precedent, the district court did not abuse its discretion in denying leave to file the proposed SAC. Plaintiffs’ proposed amendments would have been futile because we do not consider post-removal amendments that “would destroy federal jurisdiction after the case has been properly removed.” Chabner, 225 F.3d at 1046 n. 3.
The majority apparently would not apply this principle here, however, because it believes “Plaintiffs ... did not amend the FAC ... so as to avoid federal jurisdiction.” Opinion p. 1117. I disagree— that is exactly what Plaintiffs attempted to do. They sought to amend their complaint to “elaborate on estimates of the percentage of total claims asserted against Meridian ... and the dollar value of those claims,” Opinion p. 1117. The clear purpose of those amendments was to add new allegations that would satisfy the local controversy exception and thereby foreclose federal jurisdiction under CAFA. Indeed, according to the, majority, Plaintiffs’ amendments accomplished that very intended result. Under these circumstances the district court did not abuse its discretion in denying leave to amend.
B.
The above reasoning seems clear to me. But even if the district court had abused its discretion in denying Plaintiffs leave to file the SAC, the proper course would be for us to remand to the district court, rather than to analyze the SAC’s allegations in the first instance.
As an initial matter, although Plaintiffs moved to amend their FAC on April 12, 2012, the district court denied that motion in all material respects in its omnibus order dated January 2, 2013. Thus, the proposed SAC was not operative, and indeed never became operative. This fact is a problem for the majority’s analysis in Part B because Coleman requires federal courts “to look to the complaint rather than to extrinsic evidence” in resolving whether a significant local defendant exists. Coleman, 631 F.3d at 1016. The “complaint” referenced in Coleman clearly refers to an operative complaint, not to a proposed one, like the SAC. As a result, until it is properly filed with the district court, the SAC is evidence extrinsic to the operative FAC, which cannot be considered in analyzing subsections (aa) and (bb) of the local controversy exception. Id.
If the majority believes the district, court’s denial was an abuse of discretion, it should not decide whether extrinsic evidence in the proposed SAC satisfies the local controversy exception in the first instance on appeal. Rather, It should remand for the district court to to address that question in the first instance, once its alleged error has been corrected. Zivotofsky ex rel. Zivotofsky v. Clinton, — U.S. -, 132 S.Ct. 1421, 1430, 182 L.Ed.2d 423 (2012) (“[W]hen we reverse on a threshold question, we typically remand for resolution of any claims the lower courts’ error prevented them from addressing.”).
III.
In my view, the district court correctly considered only the allegations in the operative complaint at the time of removal— without regard to subsequent attempted amendments — in analyzing whether Plain *1125 tiffs met their burden under subsections (aa) and (bb) of the local controversy exception. See Sparta Surgical, 159 F.3d at 1213. For this reason alone, I would hold that the district court did not abuse its discretion in denying leave to amend. Alternatively, however, I would hold that district court did not abuse its discretion because Plaintiffs’ proposed amendments would have been futile, since we are not permitted to consider those that would have eliminated federal jurisdiction. See Chabner, 225 F.3d at 1046 n. 3.
I would hold that the district court, after properly limiting itself to considering only the allegations in the FAC, did not err in concluding that Plaintiffs failed to satisfy the requirements of CAFA’s local controversy exception. I therefore dissent.