PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FILED
United States Court of Appeals
Tenth Circuit

April 11, 2014

Elisabeth A. Shumaker
Clerk of Court

VICKIE SCHMIDT PARSON;
PATRICIA SCALES; SEAWILLOW
SCHMIDT; LORRAINE
SCHUMACHER; NICOLE SCOTT;
RHONDA SECHRIST; REGINA
SELLERS; DONNA SEVERO;
JACQUELINE SHAAK; FRANK M.
SHADD; MYRTLE SHADD; PEGGY
SHANNON-MCDOWELL; CAROL
SHAW; TERRI SHAZER; SHARI P.
SHEPPART; KAREN SHERIDAN;
LIZETTE SHIELDS; KIMBERLY
SILLEN; ANGELA SILVEIRA;
ELIZABETH SIMPSON; MAHLON
SIMPSON, a/k/a Alex Simpson;
THERESA SISSON; TERESA SKAINS;
NORMA SKORUPA-TODD; CANDY
SMITH; KATHLEEN TEAGUE; SUSAN
TAGLIAFERRO; JOAN SMITH; MARIE
SMITH; JOANNE SMITH; STACEY
SMITH; ISABEL M. SMITH; MARY
SPARKS; JACKIE SPIGENER;
JUANITA STARR; DARLENE STEELE;
YLONDA STEPHENS; JUDY M.
STEPHENS; KRISTINA STEVEN;
KELLY STEVENS; KAROLYN
STEVENSON; JUDITH STONE; JACK
G. STONE; EMILY M. STROUD; JODIE
SWAN; SUE SWETNAM; APRIL
SWICK; DAVID SWICK; BARBARA
SWINGLE; JOANN SMITH,

        Plaintiffs-Appellees,

v.

No. 13-6287

JOHNSON & JOHNSON; ETHICON, INC.,

Defendants-Appellants.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; PHRMA; PRODUCT LIABILITY ADVISORY COUNCIL, INC.; WASHINGTON LEGAL FOUNDATION, AMERICAN ASSOCIATION FOR JUSTICE,

Amici Curiae.
_____

KIM DARNALL; DEBBILYNN DAVILA; JAMIE DAVIS; KIMBERLY DENTON; JOHN DI PIERRO, SR.; SUSIE DI PIERRO; JANET DICKE; ANORA DIKE; SOPHIE DIMACCIO; VALLIE DIXON; MARY DOSS; VONDA DOUROS; DEBORAH DUBE; STEPHANIE DUDDRIDGE; SHERRY DUNSTON; DEANNA EAGLES-THOMPSON; BRYN EFSEROFF; KIM EGGINTON; BARRY ELZIG; CHRISTINA ELZIG; LUCY ANN ENGLEBERT; STELLA EVANS; VERA LOIS FITZJARRELL; BETTY L. FITZSIMMONS; ALMA FLANAGAN; GLENDA FLEMING; SHANNON FORD; BEVERLY FRIDLEY; AMANDA FULLER; TONYA GALLARDO; SUSAN GARDNER; CHRISTY GARDOM; ASHLEY GIBBS; MARY GOODMAN; KAREN GOTSHALL; ESTELLA GRANILLO; ANITA GREEN; LEANN GREUBEL; LETICIA GRIJALVA; MARGIE

No. 13-6288

GRIMES; HOLLY HAHN; RITA HALL; DONNA HAMRICK; JOLEEN HARLESS; JOHNNIE HARPER; WANDA HARTLEY; LINDA HARTZELL; MILDRED HATCHER; DEBRA HAUGH; LILA HAWKINS; PHYLLIS HAWKINS; ROBERT W. HAWKINS; TRAVIS HAWKINS; KITTIE HENZLIK; FLORENCE HERNANDEZ; BONNIE HEUER; LORI HIGDON; DEBRA HIGGINBOTHAM; LISA HILL; NATALIE HODGKINSON; JOYCE HOLLOWAY; CAROL HOLZEM; VICKI HOMAN; CARLA HOPP; CYNTHIA HOWARD; RHONDA HUDGINS; RAMONA HULBURD; PHYLLIS HUMAN; JENNIFER HUTCHINS; NATALIE JO JACKSON; ROSLYN JACKSON; TAMMY JACKSON; ALMA JEFFRIES; MICHELLE STATES; PATRICIA ORDINO; BRENDA HUNNICUTT TAYLOR,

      Plaintiffs-Appellees,

v.

ETHICON, INC.; JOHNSON & JOHNSON,

      Defendants-Appellants.

------------------------------

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA; PHRMA; PRODUCT LIABILITY ADVISORY COUNCIL, INC.; WASHINGTON LEGAL FOUNDATION, AMERICAN ASSOCIATION FOR JUSTICE,

- 3 -

Amici Curiae.

_____

INOLA KILLSFIRST; JOANNE P. MCCANN; ANNETTEE PUCKETT; EILENE PULLIMAN; GLENDA RAMIREZ; TONIA RAMOS; EDIE RANEY; BEVERLY RAY; BERTHA REAM; INDY REBHUN; MARLENE REISINGER; PAULA REYNOLDS; MELVIN REYNOLDS; BARBARA ROBERTS; WANDA ROBINSON; EFFIE ROMANS; LORI ROSE; ELIZABETH RYAN; KELLY RYDER; LUPE F. SALAS; BRENDA SASSER; LINDA SHAFER; ELLA SHANKLIN; JAMES SHARPE; SHARON SHARPE; REBECCA SHAUGART; CLAYTON DEAN SHUCK; SHELLY SHUCK; ROSEANNA SIEFKER; STEPHANIE R. SIMS; NANCY SLOAN; CAROLE SMITH; DEBORAH A. SMITH; MELODIE SMITH; BERNADETTE SPEISER; PARRIS SPRINGER; SARAH STACK; MARY STASER; BRET E. STEPHEN; DEBORAH M. STEPHEN; CAROLE A. STEWARD; LINDA TALTON; BARBARA TAYLOR; MONICA TAYLOR; IRIS TEAT; ELVA RODRIGUEZ; CHARLENE TESSARI; KAREN THOMAS; PATRICIA THOMAS; LINDA THOMPSON; TONI TUCKER; CHARLOTTE VAN BUREN; ESTALENE VANCE; DEBBIE VICKERS; STACIE VICKERS; CHARLENE WALKER; KATHY LYNN WATSON; LESLIE ANN WEINER; SYLVIA WELCH-LANGFORD; TAWNYA WERTHMAN; TRACY WHITE; PAULA WHORTON; SHARON WILES; FRIEDA WILLARD;

No. 13-6289

- 4 -

DEBORAH WILLIAMS; SHIRLEY
WILLIAMS; SANDRA WILSON;
SHEILA WILSON; TINA WINDHOLZ;
PARTICIA WOEHLER; JOSIE
WOLD-JOHNSON; ROSETTA WOLFE;
JACKIE YANCEY; SUSAN YOAKAM,

Plaintiffs-Appellees,

v.

ETHICON, INC.; JOHNSON &
JOHNSON,

Defendants-Appellants.

_____

TAMMY McCAUGHTRY; LINDA
PANNONE; TERESA MITCHELL;
MICHELE MIXON; VIRGINIA
MOCKAITIS; GLENNA B. NEZ;
FRANK NEZ; ROSE NEZ; MABLE
NOLEN; SANTOS O'BRIEN; IRMA
ONTIBEROS; RAMESHA ORMAND;
SUSAN ORR-MITROS; LAURA
OSTERLING; ANNE OWEN; GERALD
R. OWEN; DORTHY MAE PACK;
DEBORAH PARKS; DONNA PARRIS;
ASHLEY PARVIZI; MARGARET
PATNAUDE; LINDA PAULK; MARY
CONSTANCE PAULSEN; BARBARA
PERRIGUE; COLEEN PERRY;
PAMELA PERRY; FRANKLIN BRUCE
PERRY; CHERYL PITMAN; ANGELA
PITTS; DIANNE PLUMMER-
CHAMBERS; ELVIRA POPKEN;
MARIA PULIDO-MENDOZA;
MARGERET PYKA; JANETTE QUINN;
PAULA REES; BETTY REES; LATHA
REGHUNANTHAN; CAROL RICE;
MIRIAM RIVERA-AVILES; LOUISE
ROBERTS; MARY ROBINSON;

No. 13-6290

- 5 -

CYNTHIA RODRIGUEZ; BELIN
ROMERO; RAMONA RUFF; BRIAN
RUFF; YALONDA RUSSLER; JAMES
RUSSLER; SYLVIA SANCHEZ;
VELMA SANDOVAL; RAQUEL
SANTIAGO-CRUZ; KAREN SARVER,

Plaintiffs-Appellees,

v.

JOHNSON & JOHNSON; ETHICON,
INC.,

Defendants-Appellants.
_____

VALERIE SPEARS; MANORAMA
MAHAJAN; KATHY JOHNSON;
MELISA JOHNSON; NANCY KNIBB;
SUSAN KOBESKI; YVONNE KROUT;
LYNNE KRUSLICKY; SHERRY
LANCE; PEARLE LARSEN; SHELVA
LENZKES; SHERYL LEWIS; TERRY
LINK; VICKI LORDS; LUCY LOREDO;
AMBERLY LOWMAN; JACQUILINE
MACRI; LUCILLE MAESTAS;
PATRICIA MAGGARD; PATRICIA
MAHONEY; SYLVIA MANN;
MELISSA MARMOLEDJO; DEBORAH
MARSHALL; JAYME MASON;
JEANNINE MAZAK; KAREN
McBRIDE; PATRICIA McCARTY;
ERNESTINE McCLAIN; LETTIE
McCLURE; JOY McCLURE; CHERYL
McCLUSKEY; CHASTITY McELROY;
PAMELA McFARLIN; CHRISTINA
McLEAN; RON McLEAN; LISA
McLEOD; THELMA McMANUS;
JUDITH McSWEENEY; KAYLA
MEADOR-SHARP; DEBBIE MELNICK;
WILLIAM THOMAS; DONNA

No. 13-6291

- 6 -

MILLER; ROSEMARY MILLER;
MALINDA MILLER; DEBBI
MILLISON; GIN MILLS; APRIL
MORGAN; JOSIE MORIN; VALERIE
MORRIS; CHERISE MORROW;
CAROL MORSOVILLO; DONNA
NEAL; VIRGINIA NOBBE; LISA
NOLEN; CARYN NORMAND;
MARSHA NORONA; LUCILLE
NORRELL; NATURE ANN NUNEZ;
EVA NUNLEY; THERESA NYE;
ANGELA C. PARKER; ELIZABETH
PARMER; ALBERTA PEEK; SUSAN
PERKINS; KAREN PERRY; ROSANN
PERRY; KATHRYN PETTIT;
KRISTOPHER PETTIT; DIXIE PFEIFF;
KARIN PFLEGER; DR. HANS-PETER
PFLEGER; TERRIE PHELPS; BOBBIE
PHELPS; KRISTINA PITCHFORK;
EVELYN JEANETTE POFF; TAMERA
POWELL,

   Plaintiffs-Appellees,

v.

JOHNSON & JOHNSON; ETHICON,
INC.,

   Defendants-Appellants.
_____

DIANA WADE; CHERYLE
THORNABAR; MONA SWOFFORD;
CRUZE TALAVERA; SHIRLEY
TANNER; ELIZABETH TARIN;
CATHERINE TARR; HEATHER
TASSIER; KARRIE TEMPLEMAN;
BLANCA TERRY; TERRY THOMAS;
CONNIE THURMOND; SCOTT
THURMOND; LILLIAN TREVINO
TILLIS; COLLEEN TODD; LESLIE

No. 13-6292

- 7 -

VANASKEY; JULIE ANN
VANDESTOUWE; SARA VICTORA;
TONYA VOGT; CAROL WAGNER;
PAM WALKER; CAROL WARNER;
GLENA WATSON; JANET WEBB;
TERRI WEBB; CARRIE WHITE;
TERESA WHITELEY; JANICE
WHITLOCK; DOROTHY WIGGINS;
SANDRA WILKINSON; ANNELLE
WILLARD; DESTINY A. WILLEY;
LEELLEN WILLIAMS; KEWANDA
WILLIAMS; CATHY WILSON; VENUS
WITT; GERALDINE WOLF; MARY
WOOD; CHRISTINE WOODROW;
DARIA WORLEY; TERESA WRIGHT;
PAULETTE WRIGHT; TRENDA
WRIGHT; JANICE WRIGHT; GUSSIE
KELLY WYATT; PANSY WYNN;
DEBORAH YOUNG; HILDA ZAMORA;
E. LOUISE ZELLER,

> Plaintiffs-Appellees,

v.

JOHNSON & JOHNSON; ETHICON,
INC.,

> Defendants-Appellants.
_____

KELLI GOOCH; ARLENE BRUNSON;
PEGGY ALLEN; LESLIE ALLEN;
DEBRA ANDERSON; THOMAS
ANDERSON; GWEN ANDRESHAK;
BEVERLEY ARMOUR; KARINA
ASUNCION; PAMELA ATKINSON;
LAURA BABB; STEPHANIE BANKS;
MARY BARAJAS; VICTORIA
BARCLAY; BREND BARTRAM;
MARJEAN BAXLEY; JUDITH
BAXTER; CINDY BEHLER; THELMA

No. 13-6293

- 8 -

BENDA; STEFANI BENDER; TERESA BENDER; MARY BLAIR; JENNIFER BOCK; BARBARA LYNN BOWMAN; GLORIA BRADFORD; LEAH BRADFORD; LARRY BRADFORD; CRYSTAL BRANNON; JENNIE BRANTLEY; DELORES BROCK; ANDREA BROWN; BRENDA BROWN; SANDRA BROWN; JUDY BROWN; STEPHANIE BROWN; GAYLE BUCK; POLLY BUEBLER; JOY BULLINGTON; LINDA BULLOCK; RAYMOND C. BULLOCK; MARYANN BURKHOLDER; SHERRY BURRICHTER; MARTHA BYARS; MARY CAMACHO; GLYNN CAMBELL; PAULA CAMPBELL; PHYLLIS CAMPBELL; ARLINE CANNATA; EUNICE CANTU; JO ANN CAPUA; YVONNE CARRABINE; LORENA CARTAGENA; ANGELLA CARTER; SHUNTEL CATER; JOYCE CARVALHO; MELISSA CHAVEZ; MICHELE COLBURN; MARGARET COLCORD; BELINDA COLLINS; PEGGY COOPER; GARY J. COOPER; ELIZABETH COOPER; ANITA COOPER; PATRICIA COPELAND; TRACI COVEY; DONNA COVINGTON; SONIA COX; ROSALIE CRACCHIOLO; STEVEN METEJA; CAROLYN CRAFT; ANNA CREEK; BRANDI CURRY; DEBORAH CURTIS; MARIE CUSHENBERRY; RITA DAIRY; DONNA DALTON,

Plaintiffs-Appellees,

v.

JOHNSON & JOHNSON; ETHICON, INC.,

- 9 -

Defendants-Appellants.

_____

TERESA MARIE ANDERSON; LYNN
SCHNEIDER; MICHAEL SCHNEIDER;
IHSAN ABUZALAF; LAURA
ABUZALF; JUNE ADAMS; THERESA
ADAMS; TERRY ALES; CATHERINE
ALVAREZ; MICHELE ANGEL-
NIEROP; SALLY ANHORN;
SHANNON ARLET; AGNES
ARMSTRONG; ALBERT
ARMSTRONG; JANICE ARNOLD;
DEBRA ATKINSON; HARLEY C.
ATKINSON; BILL AUGER; SHELLIE
AUGER; LINDA AUSTIN; LOUISE
AYVAZIAN; RALPH AYVAZIAN;
JUDY BAGROWSKI; WAYNE
BAGROWSKI; SHIRLEY BARBER;
JILL BARTOLOMIE; BRENDA
BEDOKSY; THERESA BELT; TROY
BELT; LYNN MARKETTE BAYLISS;
MARTHA BENAVIDES; ANGELA
BENFORD; JENNIE BENNETT;
CHARLENE BERG; GLENNA
BERGMAN; SHARON BERRONG;
CANDACE BERRY; WANDA BLACK;
KATHLEEN BLASKO; MELISSA
BLAYLOCK; MARY BONEFAS;
JENNIFER BOSCH; SAN JUANITA
BOTELLO, a/k/a Janie; RAMIRO
BOTELLO, SR.; AUDREY
BOUGHNER; JACQUELINE BOUNDS;
DORI BOYER; TAMMY BRANTLEY;
CAROL BRENNAN; NINA BROWN;
SHERRIAN BROWN,

Plaintiffs-Appellees,

v.

No. 13-6294

- 10 -

JOHNSON & JOHNSON; ETHICON,
INC.,

Defendants-Appellants.
_____

ILARAE J. PAGE; COLLEEN M.
MORGAN; DEBRA JENKINS;
GERALDINE JENKINS; DEANNA
JENKINS; PATRICIA JINRIGHT;
NELLIE JOHNS; CAROLYN
JOHNSON; JENNIFER JOHNSON;
NICOLE JOHNSON; TAMMIE
JOHNSON; CHRISTINE JORDAN;
SHERRY KEEFFE; CHRISTY KEITH;
KEVIN KEITH; JANA KELLENBENZ;
DANETTE I. KNODE; GRACE KORN;
SANDRA KORPI; JOSEPHINE
KOSIOL; BRENDA KRAFT; JENNIFER
KRAMER; SUSAN KRENGULEC;
ROSEMARY LASCAREZ; LILLIE
LENNEAR; DEBRA LEONOR; JEAN
ANN LEWIS; TAMMY LINDSAY;
CAROL LINN; NANCY LITKE; MARIA
LOPEZ; FLORENCE LYNCH; JOHN A.
LYNCH, SR.; JOYCELIN LYNCH;
MARTHA MARKHAM; ETHEL
MARRUFO; BELINDA MARTINEZ;
DENISE MARTINEZ; KAREN
MASSAMILLO; DANAN LIEVENS;
JANET MCCARTHY; REBEKAH
MCCARTNEY; CHERYL MCCLAIN;
RACHELLE MCCLARREN; BETTY
MCDONALD; JACK MCDONALD;
JILL MERCADO; ESSIE
MIDDLEBROOKS; DAWN MILLER;
CARLA MIRACLE,

Plaintiffs-Appellees,

v.

No. 13-6295

- 11 -

JOHNSON & JOHNSON; ETHICON, INC.,

Defendants-Appellants.

_____

LARRY JOHN COZART; R JUDITH DEMCHAK; BRADLEY DEMCHAK; JAMIE DEVISH; JENNIFER DOBBINS; SANDRA DOCTOR; GEORGE DOCTOR; SANDY DODGEN; PHILLIP DUDGEN; DEBORAH DOYLE; GRACIELA DRANOWOSKY; TERESEA ANN DUNN; MARILYN ECOFF; MARYANN EICH; COLINNETTE EILERS; LISA ELDER; DEBRA ELWARD; DELORES FARMER; ZELLA FARMER; SHELLY FARNSWORTH; VALERIA FAVORS; BERNADETTE FEIKERT; LINDA FERGUSON; NORMA FISHER; MARGUERITE FLETCHER; TARA FOOTE; CORISA FORD; SHEILA FORRESTER; BRIDGET FOWLER; LAURA FOX; KATHERINE FRANKS; TAWNEY FRANTZ; SALLY FRAWLEY; SANDRA FREELAND; PAMELA FRENO; CATHY FRESHWATER; SUSAN FRONEK; PATRICIA FUINO; ANNA FULGHAM; DIANA GABRIEL; MARIA GALARZA; ROSAMARIA GARCIA; SHERILYN GARDNER; SHEILA GARRETT; JOY L. HALLIBURTON; LUZ LORA,

Plaintiffs-Appellees,

v.

ETHICON, INC.; JOHNSON & JOHNSON,

No. 13-6296

- 12 -

Defendants-Appellants.

_____

SARAH RUTH ALLBRITTON;
WARREN BELL; EVELYN
BROWNLEE; ROBIN BRUHN;
ELIZABETH BRUNA; JUSTIN BRUNA;
TERRY BRYSON; JUNE BUENO;
BERNESSA BURSE; BRENDA
BURTON; VIRGINIA BUSBY;
SHARAN BUSH; CANDICE BYRUM;
TERRY E. BYRUM; JAMIE
CALDWELL; PATRICIA A. CARTER;
DIANE CHAMBERS; JACQUELINE
CHANEY; CHARLES H. CHANEY, IV;
MARGIE CHAPMAN; JEANETTE V.
CHESSER; MARY CHRANE; JOAN
CLARKE; SANDY CLAY; PATRICIA
CLIMER; JANICE COATES; JANICE
COLL; JANICE COLLINS; RONNILYN
COLLINS-BELL; JAMES COON;
SHARRON COON; JOANN COOPER;
TAMARA BETH CORNELIUS;
PATRICIA CORONEL; ZULEMA
CORTEZ; CYNTHIA COURTNEY;
MARGO HENDERSON
CROSTHWAITE; JOSE CRUZ;
PRISCILLA CRUZ; SHAWN CURRO;
CYNTHIA DANIELS; SANDRA
DAVIDSON; MISTY DE GROAT;
JEANETTE DE MAUNEY;
CHARLOTTE DEHN; PATRICIA
DEITERING; NORMA DELEON,

        Plaintiffs-Appellees,

v.

ETHICON, INC.; JOHNSON &
JOHNSON,

        Defendants-Appellants.

No. 13-6297

- 13 -

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. Nos. 5:13-CV-00832-L, 5:13-CV-00833-L, 5:13-CV-00834-L,
5:13-CV-00836-L, 5:13-CV-00838-L, 5:13-CV-00839-L, 5:13-CV-00840-L,
5:13-CV-00841-L, 5:13-CV-00844-L, 5:13-CV-00845-L, 5:13-CV-00846-L)**

---

Stephen D. Brody of O'Melveny & Myers LLP, Washington, D.C. (Larry D. Ottaway, Amy Sherry Fischer, and Andrew M. Bowman of Foliart, Huff, Ottaway, & Bottom, Oklahoma City, Oklahoma; Richard B. Goetz of O'Melveny & Myers LLP, Los Angeles, California, with him on the brief) for Defendants-Appellants.

Julie L. Rhoades of Matthews & Associates, Houston, Texas (Timothy M. Bunson, Sill Law Group, Edmond, Oklahoma, with her on the brief), for Plaintiffs-Appellees.

Richard A. Samp and Cory L. Andrews, Washington, D.C., filed an amicus curiae brief for the Washington Legal Foundation.

Jeremy B. Rosen and Steven S. Fleischman, Horvitz & Levy, LLP, Encino, California, filed an amici curiae on behalf of the Chamber of Commerce of the United States of America and PHRMA; Kate Comerford Todd and Tyler R. Green, National Chamber Litigation Center, Inc., Washington, D.C., filed an amicus curiae brief on behalf of the Chamber of Commerce of the United States of America; James M. (Mit) Spears and Melissa B. Kimmel, Washington, D.C., filed an amicus curiae brief on behalf of PHRMA.

Anita Hotchkiss, Matthew S. Lerner, and Brendan T. Fitzpatrick, Goldberg Segalla LLP, Princeton, New Jersey; Hugh F. Young, Jr., Esq., Product Liability Advisory Council, Inc., Reston, Virginia, filed an amicus curiae brief on behalf of Product Liability Advisory Council, Inc.

J. Burton LeBlanc, IV, American Association for Justice, Washington, D.C.; Louis M. Bograd, Center for Constitutional Litigation, P.C., Washington, D.C., filed an amicus curiae brief on behalf of the American Association for Justice.

---

Before **BRISCOE**, Chief Judge, **McKAY** and **ANDERSON**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

In the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453 ("CAFA" or "Act"), Congress authorized the removal of certain class actions from state to federal court. The Act's primary objective was to "ensur[e] Federal court consideration of interstate cases of national importance." *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (internal quotation marks omitted). To this end, CAFA also provides for the removal of "mass actions" that do not qualify as traditional class actions, *see* Fed. R. Civ. P. 23, but which otherwise meet the Act's criteria, *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 867 (9th Cir. 2013); *see also* 28 U.S.C. § 1332(d)(11)(A), (B).

CAFA defines a mass action as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law and fact." *Id.* § 1332(d)(11)(B)(i). The Act excludes from the term "mass action," inter alia, any civil action in which either "the claims are joined upon motion of a defendant," or "the claims have been consolidated or coordinated solely for pretrial proceedings." *Id.* § 1332(d)(11)(B)(ii)(II), (IV).

The controversy before us began when 702 plaintiffs from 26 different states and the Commonwealth of Puerto Rico filed twelve nearly identical product liability actions against the defendants in the District Court of Pottawatomie County, Oklahoma. The defendants are manufacturers of transvaginal mesh medical devices.

The plaintiffs are women who were implanted with the devices and their husbands, who assert loss-of-consortium claims.

None of the individual actions contained 100 or more plaintiffs. Each of the actions included at least one New Jersey resident plaintiff. Each complaint specifically disclaimed federal question and federal diversity jurisdiction, and included provisions that admitted the claims had been joined for the purpose of pretrial discovery and proceedings but disclaimed joinder for trial purposes. All twelve actions were assigned to the same state court judge.

The defendants, corporate residents of New Jersey, removed the actions to the United States District Court for the Western District of Oklahoma, relying on both diversity jurisdiction and CAFA removal jurisdiction. They argued that complete diversity existed between the parties because in each action, the New Jersey citizen plaintiff had been fraudulently joined and should therefore be disregarded for diversity purposes. They further contended that jurisdiction was available under CAFA's "mass action" provision because, by filing all of the suits in the same court before the same judge, plaintiffs had proposed a joint trial of claims involving more than 100 plaintiffs.[1]

---

[1] The parties do not dispute the existence of any other requirement for CAFA removal jurisdiction.

Plaintiffs moved to remand eleven of the actions, involving 650 plaintiffs,[2] to state court.  The district court granted their motion.  It declined to adopt the procedural misjoinder doctrine advocated by the defendants, and concluded that plaintiffs had not in fact proposed a joint trial of their claims, as required for CAFA removal jurisdiction.  *Halliburton v. Johnson & Johnson*, ___ F. Supp. 2d ___, Nos. CIV–13–832–L, CIV–13–833–L, CIV–13–834–L, CIV–13–836–L, CIV-13-838-L, CIV–13–839–L, CIV–13–840–L, CIV–13–841–L, CIV–13–844–L, CIV–13–845–L, CIV–13–846–L, 2013 WL 5719016 (W.D. Okla. Oct. 18, 2013).  We now affirm the district court's order remanding these cases to state court.

## I. APPELLATE JURISDICTION

Ordinarily, an order remanding a removed case to state court is not appealable.  28 U.S.C. § 1447(d).  CAFA provides an exception by permitting a court of appeals to review an order remanding a class action—including a mass action—to state court "if application is made to the court of appeals not more than 10 days after entry of the order."  *Id.* § 1453(c)(1).  The defendants filed a timely application to appeal.  We therefore have jurisdiction to review the order of remand under CAFA.

---

[2]     Plaintiffs did not move to remand one of the actions, *Bridgewater, et al. v. Johnson & Johnson, et al.*, CIV-13-843-L, involving 52 plaintiffs from 15 states. *Bridgewater* was eventually transferred to the United States District Court for the Southern District of West Virginia, for consolidated or coordinated pretrial proceedings in a multi-district litigation pending within that court, and is therefore not before us.

- 17 -

We discuss our jurisdiction to review the district court's determination concerning diversity jurisdiction in Part III, *infra*.

## II. REMAND UNDER CAFA

"We review the district court's ruling on the propriety of removal de novo." *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1245 (10th Cir. 2012). The issue here is a narrow one: whether a joint trial involving the claims of 100 or more persons has been proposed, thus making plaintiffs' claims a "mass action" removable to federal court. At the outset, we note that it seems clear that the plaintiffs' choice to file separate suits, each containing fewer than 100 plaintiffs, cannot simply be disregarded as procedural gamesmanship and their "civil action" summarily treated as a single one containing 650 plaintiffs. On that point, we adopt the well-established principle, explained in several persuasive cases from our sister circuits, that "state court plaintiffs with common claims against a common defendant may bring separate cases with fewer than 100 plaintiffs each to avoid federal jurisdiction under CAFA—unless their claims are 'proposed to be tried jointly.'" *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162-63 (8th Cir. 2013) (collecting cases); *see also Scimone v. Carnival Corp.*, 720 F.3d 876, 884 (11th Cir. 2013) ("Every other court of appeals confronted with this question has come to the same conclusion: that plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs and by not moving for

or otherwise proposing joint trial in the state court."); *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 953 (9th Cir. 2009).

Plaintiffs have conceded that their claims involve common questions of law and fact. The real battle here is over whether the plaintiffs' filing of these cases in the same Oklahoma court, even if permissibly divided into eleven different actions, proposed a joint trial involving all of their claims. In support of their argument that it did, the defendants emphasize that "a joint trial can take different forms as long as the plaintiffs' claims are being determined jointly." *In re Abbott Labs., Inc.*, 698 F.3d 568, 573 (7th Cir. 2012). By placing their claims before the single Oklahoma judge, they argue, the plaintiffs have implicitly proposed a joint trial under CAFA through their litigation conduct. Given this reality, the defendants urge us to disregard plaintiffs' express statement that they have not joined their claims for trial. To hold otherwise, they claim, would be to exalt form over substance, sanction procedural gamesmanship, and thwart the Congressional intent behind CAFA.

The plaintiffs respond that CAFA's definition of a "mass action" is a narrow one, and that removal statutes are to be strictly construed against removal. They argue that they are masters of their complaint, which they deliberately structured to avoid federal jurisdiction under CAFA. The plaintiffs emphasize that they have "consolidated or coordinated" their claims "solely for pretrial proceedings," thus bringing themselves within the exclusion in 28 U.S.C. § 1332(d)(11)(B)(ii)(IV).

## A.  Statutory Text

We begin our analysis with the statutory text.  *See, e.g.*, *Scimone*, 720 F.3d at 881 ("The starting point for interpreting what constitutes a proposal for a joint trial . . . is the language of the statute itself." (internal quotation marks omitted)). Although plaintiffs argue that removal statutes should be strictly construed against removal, this principle of construction does not defeat the general principle of statutory construction that terms used in a statute should be given their plain meaning.  *See Miss. ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 744 (2014) (interpreting the term "plaintiffs" as used in CAFA "in accordance with its usual meaning," leading to an easy-to-apply rule, and noting that "when judges must decide jurisdictional matters, simplicity is a virtue").

The relevant text is that defining "mass action" as "any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law and fact." 28 U.S.C. § 1332(d)(11)(B)(i).  CAFA does not explicitly define either a "proposal" or a "joint trial."  It does not specify who can make such a proposal—the plaintiffs only, or the district court through an order of consolidation or coordination.  It does not tell us how to distinguish between a proposal for joint pre-trial proceedings and a proposal that claims be tried jointly.  And it does not define how such a proposal may be made.

Nevertheless, we have little difficulty under the circumstances presented here in determining that neither the plaintiffs, nor the state court, have "proposed" a "joint trial" within the meaning of the statute. Not only does CAFA's plain language support this result, but as will be seen, the legislative history and persuasive authority from the Supreme Court and other circuits also lend support to this conclusion.

First, the common usage of the word "propose" involves an intentional act. To "propose" means "to suggest (something, such as a plan or theory) to a person or group of people to consider"; "to plan or intend to do (something)"; or "to suggest (someone) for a job, position, office, etc." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/proposed (visited March 29, 2014). *See Scimone*, 720 F.3d at 884 ("The more natural reading of the [mass action] provision is that the plaintiffs must actually want, or at least intend to bring about, what they are proposing.").

Far from "proposing" a joint trial, plaintiffs here have explicitly disclaimed such an intention in their complaints.[3] Their intention to avoid CAFA jurisdiction is also consistently reflected in their litigation conduct. They have not requested consolidation of their claims for trial, and there is no indication that the state court has itself "proposed" such a consolidation. Certainly, no explicit proposal for a joint

---

[3] The complaints state that "[j]oinder of Plaintiffs' claims is for the purpose of pretrial discovery and proceedings only and is not for trial." Aplt. App., Vol. I at 223a.

trial has been made, either in plaintiffs' complaints or in any other document that forms part of the record before us.

The defendants contend, however, that plaintiffs made an *implicit* proposal for a joint trial through their choice of a common forum for their claims. But even if a proposal for joint trial may be made implicitly under certain circumstances,[4] nothing in CAFA's plain language supports the concept that such a "proposal" may be inferred simply because plaintiffs filed within a single jurisdiction separate complaints containing similar claims, where they made no request that the claims be consolidated or coordinated for trial in any way.[5] Furthermore, defendants' attempts to persuade us that the plaintiffs' complaints are in essence already consolidated or coordinated cannot, by statutory definition, itself create a "mass action," because a mass action cannot result from a proposal for joinder by the defendants. 28 U.S.C. § 1332(d)(11)(B)(ii)(II); *see also Anderson v. Bayer Corp.*, 610 F.3d 390, 393-94

---

[4]    The Seventh Circuit has stated that under CAFA, "a proposal for a joint trial can be implicit." *Abbott Labs.*, 698 F.3d at 572. But none of the examples provided in *Abbott Laboratories*—the filing of a single complaint containing more than 100 plaintiffs; a proposal for a trial involving exemplary plaintiffs, to be followed by the application of issue or claim preclusion to more than 100 claims; or an express request for consolidation through trial—approaches the circumstances presented here. We therefore conclude *Abbott Laboratories* is distinguished from our case.

[5]    The defendants' position seems to rest on an assertion that a joint trial is a necessary consequence of the plaintiffs' choice of a common forum to hear their complaints. Although it is an ancient principle in the law that a party "must be presumed *to intend the necessary consequences of his acts*," *Toof v. Martin*, 80 U.S. 40, 48 (1871) (emphasis added), here it is too early to tell whether a joint trial will be such a "necessary consequence" of the plaintiffs' Oklahoma filings.

(7th Cir. 2010) ("[Defendant's] argument that these separate lawsuits be treated as one action is tantamount to a request to consolidate them—a request that Congress has explicitly stated cannot become a basis for removal as a mass action"); *Tanoh*, 561 F.3d at 953-54 (noting that the defendant, "while never formally moving to consolidate plaintiffs' claims—urges us to treat those claims as if they should have been consolidated for purposes of removal under CAFA . . . .[This] request precisely fits the statutory limitation [in § 1332(d)(11)(B)(ii)(II)].").

We find further support for this understanding by considering the applicable terms within their statutory context. The fact that Congress excluded from the definition of a "mass action" claims consolidated merely for pretrial proceedings, *see* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV), even if such claims would otherwise meet the definition of a "mass action," suggests that the mere act of *filing* separate but similarly-worded complaints against a common defendant in the same court does not necessarily constitute a proposal for a joint *trial*. Congress clearly contemplated situations in which the claims of 100 or more persons *would* be deliberately filed and consolidated for pretrial purposes only—likely within the same court—without coming within the definition of a "mass action."

This brings us to the other significant phrase requiring analysis: a "joint trial." A "trial" is "[a] formal judicial examination of evidence and determination of legal claims in an adversary proceeding." Black's Law Dictionary 1644 (9th ed. 2009). A "joint trial" is "[a] trial involving two or more parties." *Id.* We agree with the

defendants that a "joint trial" need not involve all 650 plaintiffs being seated together in the same courtroom at the same time. But we cannot agree that plaintiffs' filing of eleven suits in the same Oklahoma court—even given the likelihood that measures of judicial economy, scheduling, and organization such as bellwether trials *may eventually* be employed in connection with the "examination of evidence and determination of legal claims"—necessarily implies an existing "proposal" for a "joint trial." *See Anderson*, 610 F.3d at 394 (noting that a proposal for some form of joint trial "seems possible (perhaps even likely) at some future point in these cases, given the similarity of their claims. But it is not yet a certainty, and Congress has forbidden us from finding jurisdiction based on [defendant's] suggestion that the claims be tried together"); *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011) (stating that the plaintiffs' prediction of what might happen if the judge decided to hold a mass trial was not the same as a proposal for such a trial); *cf. Visendi*, 733 F.3d at 868 ("Whether Plaintiffs' claims ultimately proceed to a joint trial is irrelevant" to question of whether a joint trial had been proposed at the time of removal.).

We therefore reject defendants' argument that under the circumstances of this case, plaintiffs have implicitly proposed a joint trial. Because there is no joint trial proposed, plaintiffs' claims do not represent a "mass action" and the district court properly remanded them to state court.

## B. CAFA's Purposes and Origin

Although the application of CAFA's plain language is sufficient for us to affirm the district court here, we note that an examination of the purposes and origin of CAFA also supports our conclusion that plaintiffs have not proposed a joint trial. CAFA's stated purposes are to "assure fair and prompt recoveries for class members with legitimate claims;" to "restore the intent of the framers . . . by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction;" and to "benefit society by encouraging innovation and lowering consumer prices." CAFA § 2, Pub. L. No. 109-2, 119 Stat. at 5 (2005). The Senate Report accompanying CAFA explains that mass actions were added to the Act because "[m]ass action cases function very much like class actions and are subject to many of the same abuses." S. Rep. No. 109-14, at 46 (2005). The primary "abuses" Congress identified were misuse of the "complete diversity requirement" and abuse of the "amount-in-controversy" requirement. *Id.* at 10.[6] Neither is at issue in this CAFA removal action.

Moreover, the Senate Report describes a mass action as "any civil action in which 100 or more named parties *seek to try their claims for monetary relief together*." *Id.* at 44 (emphasis added). The definitional emphasis here is on the plaintiffs' intent, on what they "seek" to accomplish. As we have already explained,

---

[6] Under CAFA, the aggregate amount in controversy must exceed "$5,000,000, exclusive of interest and costs," and at least one plaintiff must be a citizen of a state or foreign state different from that of any defendant. 28 U.S.C. § 1332(d)(2), (6).

there has been no showing that plaintiffs here have sought to conduct a joint trial of their claims.

## C.  Existing Case Law

Cases in this area necessarily are fact-specific, due to the need to apply CAFA's statutory principles to the particular jurisdictional facts involved. Nevertheless, we also find support for our approach in Supreme Court authority and in cases from other circuits.

### 1.  Supreme Court Authority

In *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736, 740 (2014), the state of Mississippi filed a state court parens patriae suit against manufacturers, marketers, sellers, and distributors of liquid crystal display panels, alleging violations of the Mississippi Consumer Protection Act and the Mississippi Antitrust Act.  The defendants removed the action to the Southern District of Mississippi.  The federal district court subsequently granted the Mississippi attorney general's motion to remand to state court, citing CAFA's "general public" exception.[7]  The Fifth Circuit reversed, holding that the case qualified as a "mass action" but that the "general public" exception did not apply.

---

[7]     CAFA excludes from the definition of a mass action "any civil action in which . . . all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action." 28 U.S.C. § 1332(d)(11)(B)(ii)(III).

- 26 -

The Supreme Court reversed the Fifth Circuit decision. The Court reasoned that even if 100 or more unnamed persons were "real parties in interest," this was insufficient to establish that the state had filed a "mass action." *Id.* at 741-42. The Court noted that "the statute says '100 or more persons,' not '100 or more named or unnamed real parties in interest.' Had Congress intended the latter, it easily could have drafted language to that effect." *Id.* at 742. Moreover, "the term 'persons' in § 1332(d)(11)(B)(i) refers to the individuals who are proposing to join as plaintiffs in a single action," not to proposed but unnamed real parties in interest. *Id.*

Most significantly for the issues in this case, the Court then went on to discuss the Court of Appeals' reliance on "background principles" of CAFA. The Fifth Circuit had claimed to be looking to the substance of the action rather than the labels the parties had attached to it. The Supreme Court concluded that Congress did not intend that courts engage in such a background inquiry when deciding whether a suit is a mass action. *Id.* at 745-46. The Court found significant CAFA's express provision that a mass action would not include "any civil action in which . . . the claims are joined upon motion of a defendant." *Id.* at 746 (quoting 28 U.S.C. § 1332(d)(11)(B)(ii)(II)). With this language, "Congress demonstrated its focus on the persons who are actually proposing to join together as named plaintiffs in the suit." *Hood*, 134 S. Ct. at 746. The Supreme Court's reasoning here suggests a narrow focus on the statutory language, and on the plaintiffs actually named in the suit.

- 27 -

The defendants find a contrary principle stated in *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013). In that case, the Court cautioned us, in performing the CAFA analysis, against "treat[ing] a nonbinding stipulation as if it were binding, exalt[ing] form over substance, and run[ning] directly counter to CAFA's primary objective: ensuring Federal court consideration of interstate cases of national importance." *Id.* at 1350 (internal quotation marks omitted). But "[t]he holding of *Knowles*, which concerns a different section of the statute, plainly does not address the issue presented in this case." *Scimone*, 720 F.3d at 886. In *Knowles*, a stipulation concerning the amount in controversy purported to bind absent class members that could not be legally bound before the class was certified. Here, the named plaintiffs, through their attorneys, have stated in their complaints that they do not intend to try their cases jointly. We therefore distinguish *Knowles* from the circumstances in our case.

### 2. Authority from Other Circuits

We have found no published case from another circuit that tracks precisely with what we view as the essential facts of this case: the filing of eleven separate suits, each containing fewer than 100 plaintiffs, but in the aggregate containing far more than 100 plaintiffs, assigned to the same state-court judge, with each complaint noting that the claims within the complaint would be consolidated for pretrial and discovery purposes, but containing an express disclaimer of any request that the claims be jointly tried. *Cf. Atwell*, 740 F.3d 1161 (three groups of plaintiffs, each

comprising fewer than 100 plaintiffs, filed motions proposing that the state court assign each group to a single judge for purposes of discovery and trial; CAFA jurisdiction present); *Visendi*, 733 F.3d at 867-68 (plaintiffs' initial complaint proposed a joint trial in state court, and their claims involved "common questions of law or fact" sufficient to justify removal under CAFA; CAFA jurisdiction present); *Romo v. Teva Pharm. USA, Inc.*, 731 F.3d 918, 921, 923 (9th Cir. 2013) (plaintiffs sought coordination of multiple actions under a California Rule of Civil Procedure that did not limit coordination to pretrial matters, stating they wished to avoid danger of "duplicative discovery, waste of judicial resources and possible inconsistent judicial rulings on legal issues," that they wished to consolidate "for all purposes," and to avoid "inconsistent . . . judgments"; CAFA jurisdiction absent), *reh'g en banc granted*, 742 F.3d 909 (9th Cir. 2014);[8] *Scimone*, 720 F.3d at 883 (plaintiffs filed two suits with 100 or more plaintiffs in the aggregate, and never moved for consolidation;

---

[8]     The majority opinion in *Romo* drew a strong dissent from Justice Gould.  He noted that "[p]roposals for joint trials may be made implicitly, and a joint trial may take different forms as long as the plaintiffs' claims are being determined jointly." *Romo*, 731 F.3d at 925 (Gould, J., dissenting).  He provided the example of an exemplary or bellwether trial, which "may only feature a small group of plaintiffs, but it is still a joint trial when the claims or issues of a larger group are precluded or otherwise decided by the results." *Id.*  In his view, the reasons plaintiffs gave in support of coordination "including the danger of inconsistent judgments and conflicting determinations of liability . . . could only be addressed through some form of joint trial." *Id.* at 927.

     *Romo* thus brings sharply into focus the issues that we have faced in deciding this case.  We, of course, will not have the benefit of the en banc Ninth Circuit's decision in *Romo*, as the scheduled rehearing will take place only after the expiration of our statutory deadline in this case.

CAFA jurisdiction absent); *Abbott Labs.*, 698 F.3d at 570-71 (several hundred plaintiffs filed ten lawsuits in three different state courts, later requesting that the state supreme court consolidate and transfer their cases to a single county; plaintiffs specifically requested consolidation through trial; CAFA jurisdiction present); *Anderson*, 610 F.3d at 392-93 (plaintiffs filed actions aggregating over 100 plaintiffs, apparently without any request for consolidation; CAFA jurisdiction absent); *Koral*, 628 F.3d at 946 (plaintiffs filed a total of 29 suits involving 117 plaintiffs in state court; later arguing that the forum was not inconvenient because some of the cases would be tried as exemplar cases and the issue of liability would be determined for the remaining cases by the result in the exemplar cases; CAFA jurisdiction absent and removal was premature); *Tanoh*, 561 F.3d at 956 (plaintiffs filed actions containing fewer than 100 plaintiffs but aggregating to more than 100 plaintiffs, but neither plaintiffs nor the state court had proposed consolidating the actions for trial; CAFA jurisdiction absent); *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 406 (6th Cir. 2008) (plaintiffs divided their suit chronologically into five separate suits covering six-month time periods, with each suit seeking less than CAFA's $5 million threshold; remanded for further proceedings concerning CAFA jurisdiction); *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 761 (7th Cir. 2008) (plaintiffs filed a single complaint containing more than 100 plaintiffs; CAFA jurisdiction present).

Though none of these cases is precisely on point, we gather one essential fact from all of them. In none of them did the court find a proposal for a joint trial present solely because the plaintiffs filed multiple cases each containing fewer than 100 claims. Thus, we conclude these cases provide implicit support for our approach, outlined above.

Finally, we emphasize that our decision rests on the facts currently presented to us in the record. "Plaintiffs' separate state court actions may, of course, become removable at [some] later point if plaintiffs seek to join the claims for trial." *Tanoh*, 561 F.3d at 956; *see also Scimone*, 720 F.3d at 881-82 (stating CAFA's plain meaning would support removal if plaintiffs moved for consolidation on the eve of trial); *Anderson*, 610 F.3d at 394 ("Of course, subsequent action by the plaintiffs in state court might render these claims removable."). But plaintiffs have not yet taken this step, and thus there is no "mass action" as yet that would support CAFA removal to federal court.

## III.  REMAND FOR LACK OF DIVERSITY JURISDICTION

Defendants argue, in the alternative, that removal was proper under the district court's diversity jurisdiction. Diversity jurisdiction generally requires complete diversity of citizenship between the parties. *See* 28 U.S.C. § 1332(a). Because plaintiffs joined at least one New Jersey plaintiff in each suit, the district court could assume diversity jurisdiction only by disregarding the New Jersey plaintiff.

Defendants argue that this can be accomplished through the doctrine of "fraudulent misjoinder."

We acquired jurisdiction over this appeal based on the specific grant of jurisdiction to review a CAFA remand order provided in 28 U.S.C. § 1453(c). Having accepted CAFA jurisdiction, we may also reach the defendants' alternative, diversity jurisdiction argument. *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240 (10th Cir. 2009) (per curiam). But in *Coffey*, we further held that our "decision to exercise that jurisdiction is discretionary." *Id.* at 1247. Accordingly we declined to determine whether the district court had properly remanded in spite of the defendants' argument that CERCLA provided another basis for federal court jurisdiction. *Id.* at 1247-48. Similar considerations prompt us also to decline to exercise jurisdiction over the diversity jurisdiction issue here.

First, consideration of this issue would require us to determine whether to recognize the doctrine of "fraudulent misjoinder of plaintiffs . . . to circumvent diversity jurisdiction," Aplt. Br. at 18 (citation omitted), a rule that the defendants admit has not yet been adopted within this circuit, *id.* at 19. Second, absent our jurisdiction over the CAFA remand order, there would have been no freestanding appellate jurisdiction to review the district court's ruling on diversity jurisdiction, a factor we found significant in *Coffey*, 581 F.3d at 1247. Finally, to reach the diversity issue would likely embroil us in difficult factual issues. We therefore decline to exercise our discretion to review the diversity jurisdiction issue.

# IV.  CONCLUSION

We affirm the district court's order remanding these cases to state court, because plaintiffs' cases do not represent a removable "mass action" as defined in CAFA.  We decline to exercise jurisdiction over the district court's decision to remand for lack of diversity jurisdiction.

No. 13-6287, *Teague, et al. v. Johnson & Johnson, et al.*

**ANDERSON**, Circuit Judge, concurring.

In order to avoid federal jurisdiction under CAFA plaintiffs' counsel intentionally filed eleven separate but virtually identical complaints, with less than 100 plaintiffs each, almost simultaneously before a single state court judge in Pottawatomie County, Oklahoma. The defendants argue that such a circumstance necessarily implies a proposal for a joint trial of some or all of those repetitive claims, or common issues of law or fact. No case cited by the defendants goes that far. The majority opinion holds that filing does not constitute a proposal, implicit or otherwise. I agree. The defendants are merely predicting what is likely to happen. But with some force.

At oral argument plaintiffs' counsel was asked if, assuming a remand, she was representing to the court that except for pretrial proceedings she or her co-counsel intended to build a Chinese wall around each of these eleven virtually identical cases and try each one independently from scratch, including questions of liability, free of any type of controlling or preclusive determinations that would govern in all of the cases. In other words she intended no joint trial in whole or in part, bellwether, exemplar, or otherwise, that would settle any issue of law or fact common to any part or all of the eleven cases. She stated that was the plan. That is a dubious prospect. In major litigation like this, especially when counsel is the same in all the cases, there are common issues of law and fact, and the cases are assigned to one judge, case management strategies will be employed for the sake of efficiency, and the avoidance of redundancy and inconsistencies. Two leading cases illustrate how joint trial proposals were deemed to

have arisen in parallel circumstances: *In re Abbott Labs., Inc.*, 698 F.3d 568 (7th Cir. 2012), and *Atwell v. Boston Sci. Corp.*, 740 F.3d 1160 (8th Cir. 2013).

In *Abbott,* several hundred plaintiffs filed ten personal injury actions against Abbott in three state courts and thereafter filed motions to have the cases consolidated. The Seventh Circuit held that the motion to consolidate constituted an implicit proposal for a joint trial, observing that the plaintiffs' consolidation request included the words "through trial", but also stressing the plaintiffs' assertion in their motion that such consolidation "would also facilitate the efficient disposition of a number of universal and fundamental substantive questions applicable to all or most of Plaintiffs' cases without the risk of inconsistent adjudication."   The court then stated that "[I]t is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases.   In either situation, plaintiffs' claims would be tried jointly."   *Abbott*, 698 F.3d at 573.

In *Atwell*, three groups of plaintiffs filed separate product liability actions against four manufacturers in Missouri's Twenty-Second Judicial Circuit.   Each group comprised less than 100 plaintiffs.   The three groups filed generally similar motions proposing that the state court assign each group to a single judge.   They disclaimed any intent to have the cases consolidated.   Rather they sought assignment to a single judge "who could handle these cases for consistency of rulings, judicial economy, [and] administration of justice."   And because of the complexity that will occur all the way through, according to counsel for the *Atwell* plaintiffs, "[t]here's going to be a process in which to select the

˘2˘

bellwether case to try."   In ruling that these cases were properly removed to federal court under CAFA, the Eighth Circuit stated that such statements by counsel "revealed the purpose of their motions—a joint assignment in which the 'inevitable result' will be that their cases are tried jointly."   *Atwell*, 740 F.3d at 1165.

In *Romo v. Teva Pharmaceuticals USA, Inc.*, 731 F.3d 918 (9th Cir. 2013), attorneys for plaintiffs in some of the forty similar product liability actions filed in California state courts sought coordination of their common actions.   The only question was whether the plaintiffs' petition for coordination constituted a proposal that the cases be tried jointly for purposes of CAFA.   The majority found that it wasn't.   Dissenting, Judge Gould stated that the "[r]easons Plaintiffs listed as supportive of their petition, including inconsistent judgments and conflicting determinations of liability, in my view could only be addressed through some form of joint trial.   When Plaintiffs asked the California Judicial Council to coordinate their cases for reasons that only a joint trial could address, they implicitly proposed a joint trial, bringing their cases within CAFA's mass action provision."   *Id.* at 927.   While *Romo*, at least the majority opinion, is no longer authoritative because en banc review has been granted, I find Judge Gould's reasoning to be persuasive and applicable to the case before us.

The rationale of these cases (and there are others) applies here.   The tactic of filing multiple cases before a single state court judge simply takes a short cut by eliminating the necessity in the cited cases of filing motions to assign, consolidate or coordinate cases before a single judge.   It does not, however, eliminate all that will

undoubtedly transpire by way of seeking avoidance of inconsistent rulings, mistakes due to complexity, judicial economy, efficiency, and so on.   Such matters cannot and, in my estimation, will not be addressed in the state court in these cases without some form of proposal (and that is all it takes), either implicit or explicit, for some sort of joint trial. Such a joint trial need not encompass relief.   "[S]ection 1332(d)(11)(B)(i) requires only that the plaintiffs' claims involve common issues of law or fact. . . ."   *Koral v. Boeing Co.*, 628 F.3d 945, 947 (7th Cir. 2011).

But, the removals in this case, based solely on the act of filing the complaints, was premature.   To the same effect, *see id. at* 947 (remand affirmed because the removals were premature).   Removal can occur at any time in the future within 30-days of a triggering event.   *See, e.g., Atwell*, 740 F.3d at 1162; *Tanoh v. Dow Chemical Co.*, 561 F.3d 945, 956 (9th Cir. 2009) ("Plaintiffs' separate state court actions may, of course, become removable at some later point if plaintiffs seek to join the claims for joint trial."); *Bullard v. Burlington N. Santa Fe Ry.*, 535 F.3d 759, 762 (7th Cir. 2008) (Section 1446(b) allows removal within 30 days of any event that brings a previously non-removable suit within federal jurisdiction).

In short, I believe the removals here simply to be premature.